LINN, Circuit Judge.
This action arises under the Contract Disputes Act (“CDA”), 41 U.S.C. §§ 601-613. M. Maropakis Carpentry, Inc. (“Maropakis”) appeals the decision of the United States Court of Federal Claims dismissing Maropakis’s complaint for lack of subject matter jurisdiction because it failed to present to the contracting officer a “claim” within the meaning of the CDA. Maropakis further appeals the grant of the government’s counterclaim for liquidated damages. Because Maropakis has demonstrated no errors of law or clearly erroneous factual findings, we affirm.
Background
On April 6, 1999 the Navy awarded a contract to Maropakis for, among other things, the replacement of windows and a roof at a warehouse building located at Naval Inventory Control Point in Mechanicsburg, Pennsylvania. M. Maropakis Carpentry, Inc. v. United States, 84 Fed. Cl. 182, 185 (2008). The contract specified a completion date of January 16, 2000, though this was later modified by extensions to February 4, 2000. The contract also included a liquidated damages clause, in the form of 48 C.F.R. § 52.211-12, which provided that Maropakis would be liable to the government for $650 per day for each day of delay beyond the contract completion date.
Maropakis did not begin work until after the specified completion date. The project was completed May 17, 2001, 467 days after the modified completion date. On August 20, 2001, Maropakis sent a letter addressed to “Mr. W.L. Robertson O.I.C., Navfac Contracts” requesting “an extension of contract time ... from January 16, 2000 to April 17, 2001, a total of 447 con *1326 secutive calendar days” based on five alleged delays: (1) 187 days due to the inability to locate a window manufacturer; (2) 32 days in time lost from the start date of fabrication of windows due to the need to re-submit plans; (3) 107 days due to the discovery of lead-based paint; (4) 20 days due to the Navy’s prohibition of the use of asphalt as a roofing adhesive; and (5) 101 days for time lost while searching for a metal fabricator. Id. at 191. On August 28, 2001, James Nihoff, the contracting officer (“Contracting Officer”) on Maropakis’s contract responded to the August 20 letter to Robertson by stating that Maropakis did not “present[] sufficient justification to warrant the time extension” requested. Id. The Contracting Officer rejected each of the requested extensions, noting that, among other problems, some of the dates of delay were overlapping. In closing, the Contracting Officer invited Maropakis to “submit additional information” in support of its request and stated that “[t]his letter is not a Final Decision of the Contracting Officer.” Id. at 192.
On June 28, 2002, the Navy sent Maropakis another letter, pointing out that Maropakis had neither “responded [to the August 2001 letter] with additional information” nor “requested a Contracting Officers [sic] final decision for these matters.” Id. The letter also indicated that the government had made payments to Maropakis in the amount of $1,053,115, $244,036 less than the total contract price of $1,297,151. Finally, the letter informed Maropakis that it would owe liquidated damages of $303,550 representing $650 per day for the 467 days of delay in completing the project. The Navy applied this amount against the remaining contract balance, $244,036, resulting in a total due from Maropakis of $59,514.
Maropakis responded in a letter on July 22, 2002 reiterating its earlier request for an extension but mentioning specifically only the 107-day extension for the removal of lead contaminated windows. This letter referred to multiple delays but did not specify a total number of days of extension requested. The letter then stated, “we will dispute ... the liquidated damages amount of $303,550.00 and will indicate that M. Maropakis was not responsible for the delays.” Id. at 193 (emphases added). There was no follow-up to this correspondence by either party. Maropakis did not file a separate formal claim regarding the time extension.
On December 20, 2002 the Navy issued Final Decision # 03-002F which reiterated the government’s demand for liquidated damages. The government characterizes this letter as a final decision pertaining only to the Navy’s demand for liquidated damages. Maropakis contends that this letter was a final decision applying to each of its previous requests for extension of the contract period.
There was no further activity by either party until Maropakis filed a complaint on December 17, 2003 in the Court of Federal Claims alleging (1) breach of contract due to government delay and seeking resulting time extensions, and (2) breach of contract due to the government’s assessment of liquidated damages and seeking remission of the full $303,550. Amended Compl., ¶¶ 50-52, 54-55, M. Maropakis, 84 Fed.Cl. 182. The government responded by asserting a counterclaim for the $59,514 balance it contended was due the government in liquidated damages. On October 3, 2008, the Court of Federal Claims granted the government’s motion to dismiss Maropakis’s claim for time extensions for lack of subject-matter jurisdiction, finding that Maropakis had not submitted a “claim” for contract modification as required under the CDA. The Court of Federal Claims also granted the government’s motion for summary judgment as to its counterclaim *1327 on the liquidated damages issue. Maropakis appeals both decisions, arguing that its July 22, 2002 letter was sufficient to constitute a claim under the CDA. In addition, Maropakis argues that it was not required to comply with the jurisdictional prerequisites of the CDA to assert its claim for a time extension as a defense to the government’s counterclaim for liquidated damages.
We have jurisdiction under 28 U.S.C. § 1295(a)(3).
Discussion
I. Standard of Review
We review de novo the decision of the Court of Federal Claims to dismiss for lack of jurisdiction. Radioshack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir.2009). A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed.Cir.1988).
We also review de novo the grant of summary judgment by the Court of Federal Claims, “drawing justifiable factual inferences in favor of the party opposing the judgment” and reapplying the standard applicable to proceedings before the Court of Federal Claims. Long Island Savs. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed.Cir.2007). In the Court of Federal Claims, once the moving party comes forward with evidence satisfying its initial burden on a motion for summary judgment, the party opposing the motion must present evidence creating a genuine issue of material fact. Id. Whether a particular defense is permitted under the CDA is also a question of law, which we review de novo. See Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir.2002) (holding that “this court reviews de novo all legal determinations” including the defense of equitable tolling).
II. Time Extensions
 The parties in this case dispute whether Maropakis submitted a valid claim for time extensions to its contracting officer sufficient to give the Court of Federal Claims jurisdiction over the issue. Under the CDA, the Court of Federal Claims has jurisdiction over actions filed within twelve months of a contracting officer’s decision on a claim. 41 U.S.C. § 609(a). This Court has found that jurisdiction thus requires both a valid claim and a contracting officer’s final decision on that claim. James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541-42 (Fed.Cir. 1996). Since the CDA itself does not define the term “claim,” we look to the Federal Acquisition Regulations (FAR) implementing the CDA for the definition. See Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed.Cir.1995) (en banc). The FAR defines “claim” as: “a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.” 48 C.F.R. § 33.201. While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain “a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.” Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed.Cir.1997).
The CDA also requires that a claim indicate to the contracting officer that the contractor is requesting a final decision. Ellett, 93 F.3d at 1543 (“Besides meeting the FAR definition of a claim, the CDA also requires that all claims be submitted to the contracting officer for a [final] decision.”). “This does not require an explicit request for a final decision, as long as what the contractor desires by its sub *1328 missions is a final decision.Id. (internal quotation marks omitted). These requirements of the CDA are jurisdictional prerequisites to any appeal. England v. Swanson, 358 F.3d 1375, 1379 (Fed.Cir. 2004). Thus, for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim — a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision. In addition, the contractor must have received the contracting officer’s final decision on that claim. Ellett, 93 F.3d at 1541—42.
In its complaint, Maropakis alleged it was entitled to damages because of various “delays, impacts and disruptions” by the government. M. Maropakis, 84 Fed.Cl. at 184. The Court of Federal Claims found that it lacked subject matter jurisdiction over this claim for time extension because Maropakis had not satisfied the requirements of the CDA. The trial court thoroughly analyzed each communication between Maropakis and the government and found that none of them, either alone or in combination, contained a clear and unequivocal statement sufficient to qualify as a claim. Id. at 196-203.
On appeal, Maropakis argues that its letter of July 22, 2002 was sufficient to constitute a claim under the CDA. Specifically, Maropakis argues that because the July 22, 2002 letter “was the product of continuing discussions between the parties concerning the assessment of liquidated damages and cause of Project delay, the letter was sufficient to give the contracting officer adequate notice of the basis of Maropakis’s claim.” Maropakis’s Principal Br. at 20-21. The trial court found, however, that “[a]t best, a generous reading of the July 22, 2002, correspondence can be interpreted as Maropakis’s request for a final decision on the government’s liquidated damages assessment.” M. Maropakis, 84 Fed.Cl. at 203. We agree that Maropakis’s letter of July 22, 2002 was not sufficient to provide the contracting officer adequate notice of the basis and amount of Maropakis’s claim and therefore does not satisfy the CDA. As noted by the trial court, this letter mentioned specifically only the 107-day extension previously requested. Id. The letter did not state the total number of days requested in extension and did not request a final decision. In fact, the letter appears to promise a forthcoming written claim, which never materialized. A claim cannot be based merely on intent to assert a claim without any communication by the contractor of a desire for a contracting officer decision. See Transamerica Ins. Corp., Inc. v. United States, 973 F.2d 1572, 1579 (Fed.Cir. 1992), overruled in part by Reflectone, 60 F.3d 1572 (holding that submissions qualified as CDA claims when the contractor “asserted in writing and with sufficient specificity a right to additional compensation” and “the contractor communicated his desire for a contracting officer decision”); Mingus Constructors Inc. v. United States, 812 F.2d 1387, 1394 (Fed.Cir. 1987) (finding that letters indicating an intent to file a claim in the future for an unspecified amount were not claims as defined by the contract where the contractual definition of claim was substantially the same as the FAR definition: “a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract”).
Maropakis also argues that even if it was not in technical compliance with the CDA, the United States had actual knowledge of the amount and basis of Maropakis’s claim and therefore the Court of Federal Claims had jurisdiction. However, Maropakis provides no evidence that the *1329 government was ever placed on actual notice of the specific number of days of extension that Maropakis would ultimately request. Instead, Maropakis points to the government’s demand for liquidated damages and asserts that since it refers to Maropakis’s July 22, 2002 letter, the government was fully aware that at least the amount of damages assessed for the 107-day extension was in dispute.
Even assuming the government’s knowledge of Maropakis’s contentions along the way, there is nothing in the CDA that excuses contractor compliance with the explicit CDA claim requirements. See 41 U.S.C. § 605 (requiring that “[a]ll claims by a contractor against the government relating to a contract shall be in writing,” “shall be submitted to the contracting officer for a decision,” and “[f]or claims of more than $100,000, the contractor shall certify [ ] the claim”). Indeed, we have recognized that the CDA is a statute waiving sovereign immunity. Winter v. FloorPro, Inc., 570 F.3d 1367, 1370 (Fed. Cir.2009). A “waiver of sovereign immunity must be strictly construed in favor of the sovereign.” Orff v. United States, 545 U.S. 596, 601-02, 125 S.Ct. 2606, 162 L.Ed.2d 544 (2005). Such a waiver “must be unequivocally expressed in statutory text and will not be implied.” Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted). Thus, we have enforced the “strict limits of the CDA as ‘jurisdictional prerequisites to any appeal.’ ” England, 353 F.3d at 1379 (quoting Sharman Co. v. United States, 2 F.3d 1564, 1568-69 n. 6 (Fed.Cir.1993), overruled on other grounds by Reflectone, 60 F.3d 1572). Maropakis’s argument that this court may ignore the jurisdictional requirements of the CDA based on Maropakis’s allegations of knowledge by the government is without merit.
Maropakis’s letter of July 22, 2002 was not a valid claim under the CDA because it did not provide the Contracting Officer adequate notice of the total number of days actually requested in extension, it did not state a sum certain, and it did not request a final decision. The absence of notice and the failure to request a final decision were jurisdictional impairments for a claim under the CDA. Ellett, 93 F.3d at 1541-42. Moreover, while technical compliance with certification is not a jurisdictional prerequisite to litigation of a contractor’s claim under the CDA, it is a requirement to the maintenance of such an action. 41 U.S.C. § 605(c)(6); see Sharman, 2 F.3d at 1569. Here, in addition to the jurisdictional defects noted above, Maropakis’s letter was not certified.
Because Maropakis did not meet the jurisdictional prerequisites of a claim against the government for contract modification under the CDA, the Court of Federal Claims correctly dismissed Maropakis’s breach of contract claim for lack of jurisdiction.
III. Liquidated Damages
Maropakis also claimed that the government’s assessment of damages was improper and sought its remission in full. The government made a motion for summary judgment on this claim and on its corresponding counterclaim for the assessed liquidated damages. The Court of Federal Claims found that Maropakis “failed to establish a material issue as to whether the government’s liquidated damages provision was an unenforceable penalty.” It therefore granted the government’s summary judgment motion, finding Maropakis liable for the retained balance of the contract and an additional $59,514 in liquidated damages. M. Maropakis, 84 Fed.Cl. at 208.
On appeal, Maropakis argues that “the Court did not consider Maropakis’s factual defenses.” Maropakis’s Principal Br. at 27. Maropakis argues that its right to *1330 assert a defense against the government’s claim for liquidated damages means that the CDA requirements that would otherwise apply to Maropakis’s affirmative claim for entitlement to time extensions no longer apply and Maropakis can raise these issues to defend against the government’s claim. We disagree.
Maropakis relies on Placeway Construction Corp. v. United States, 920 F.2d 903 (Fed.Cir.1990), as authority for the proposition that a valid CDA claim is not required prior to raising excusable delay as a defense to the government’s liquidated damages claim.[1] However, the Placeway decision does not support such a rule. In Placeway, the contractor had submitted a written demand for payment of an unpaid contract balance of $297,226 to its contracting officer along with other demands for payment. Id. at 905. Placeway’s demands, like Maropakis’s requests, were not valid claims under the CDA. Id. In response to Placeway’s demands, the contracting officer refused to release the contract balance because Placeway had failed to complete the contract “in a timely manner.” Id. Placeway filed a complaint in the Claims Court seeking, among other amounts, the contract price balance. The United States Claims Court determined that the government’s decision to keep the contract balance was a government claim as opposed to a contractor claim and thus did not require certification. However, the Claims Court nevertheless concluded that it did not have jurisdiction over the dispute because the government had not made a final decision on its claim and thus had itself not made a valid CDA claim. On appeal, we determined that the contracting officer had effectively made a final decision on the government claim notwithstanding the fact that the contracting officer reserved the authority to redetermine the amount of the setoff claimed based upon the receipt of additional information on the actual costs incurred by the government. Id. at 906-07. Therefore, we concluded that the Claims Court did have jurisdiction over the government’s claim for liquidated damages. Id. However, we did not address whether the Claims Court had jurisdiction over any of Placeway’s defenses.
In this case, there is no dispute that the Court of Federal Claims had jurisdiction over Maropakis’s claim relating to liquidated damages and the government’s corresponding counterclaim. The parties also agree that the claim for liquidated damages was a government claim that did not require certification and that the contracting officer properly made a final decision on the issue. The Court of Federal Claims correctly found that Placeway had no bearing on the CDA’s requirements for contractor claims. M. Maropakis, 84 Fed. Cl. at 204. Several other Court of Federal *1331 Claims cases have directly addressed this issue and have all concluded that even when used as a defense to a government claim, a contractor’s claim for contract modification must adhere to the jurisdictional requirements of the CDA. Sun Eagle Corp. v. United States, 23 Cl.Ct. 465, 477 (1991) (“This court holds that the plaintiff is challenging a government claim to liquidated damages and making its own contractor claim to recover amounts withheld for liquidated damages. The latter must be certified.”)[2] (emphasis added); Elgin Builders, Inc. v. United States, 10 Cl.Ct. 40, 44 (1986) (stating that “where ... the contractor seeks to contest the assessment of liquidated damages by claiming entitlement to time extensions or other relief, the court is presented with a claim by the contractor against the government and that must first be presented to the CO” and the contractor’s defenses in such a case are “limited to the nature of, and the issues present in, the assessment itself — that is, for example, to contest that there was any delay in contract completion”).
The statutory language of the CDA is explicit in requiring a contractor to make a valid claim to the contracting officer prior to litigating that claim. The purpose of this requirement is to encourage the resolution of disagreements at the contracting officer level thereby saving both parties the expense of litigation. See 48 C.F.R. § 33.204; Reflectone, 60 F.3d at 1580. Maropakis does not point to any authority that provides an exception to the CDA claim requirements when a contractor’s claim for contract modification is made in defense to a government claim. And we see no reason to create such an exception. Thus, we hold that a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action.
Here, the Court of Federal Claims correctly required Maropakis to comply with the CDA requirements notwithstanding Maropakis’s styling of its claim as a defense to a government counterclaim for *1332 liquidated damages. Because the Court of Federal Claims correctly held that it did not have jurisdiction over Maropakis’s claim for time extensions, and because Maropakis’s extension claim was the only defense asserted against the government’s counterclaim for liquidated damages, we affirm the grant of summary judgment to the government on its counterclaim for liquidated damages.
Conclusion
The Court of Federal Claims’s determination that it lacked jurisdiction over Maropakis’s claim for breach of contract is affirmed. We also affirm the Court of Federal Claims’s grant of summary judgment to the government on its counterclaim for liquidated damages.
AFFIRMED
Dissenting opinion filed by Circuit Judge NEWMAN.

. The dissent agrees with Maropakis’s argument citing Garrett v. General Electric Co., 987 F.2d 747, 749 (Fed.Cir.1993) as authority for the assertion that claims and defenses are distinct. Op. at 1326. However, Garrett is inapposite. The issue in Garrett was whether the Board of Contract Appeals had jurisdiction over a contracting officer’s decision that GE must correct a problem under a contract at no additional cost to the Navy even though GE submitted no claims itself to the contracting officer. Thus, the only issue addressed by this Court in Garrett was whether the Board had "jurisdiction over the Navy’s claims under the contract" and "whether the Navy’s directives under the contract’s inspection clause are appealable CDA claims.” Garrett, 987 F.2d at 749. The Court found that this was a government claim over which the Board correctly determined it had jurisdiction despite the Navy’s choice of a nonmonetary remedy. Id. Gairett did not discuss GE’s defenses to the government claim at issue or whether those defenses themselves involved contractor claims that must adhere to the requirements of the CDA. Therefore, Ganett like Placeway does not support the rule advocated by Maropakis and agreed to by the dissent.

. The dissent quotes portions of this same language in Sun Eagle when describing the proposition that claims and defenses are distinct. Op. at 1334. However, the dissent, with all due respect, ignores the actual holding of Sun Eagle, which states as follows:
In the case at bar, plaintiff is seeking an adjustment of contract terms or monetary relief because it defends against the assessment of liquidated damages on the basis that the Army caused the delay. The claim is a claim by the contractor. The contractor made the claim in its claim letter and, if it recovers, the CDA would award the contractor interest on its claim. Plaintiff s contractor claim must be certified, as required by 41 U.S.C. § 605(c). In this case plaintiff did certify its claim. Defendant asserts that the certification is insufficient because the contractor failed to certify that the data supporting its claim were "accurate and complete to the best of the contractor’s knowledge and belief,” as required by section 605(c). The court need not address this issue, as the case is in settlement. However, if the issue were resolved adversely to plaintiff, the result would call for the dismissal of all of its contractor claims, and the court would retain jurisdiction only over the government claim. As a practical consequence, plaintiff likely would agree to the stay of the government claim while it recertified its contractor claims, obtained a contracting officer decision thereon, and refiled in the Claims Court. That action would be joined with the instant action and proceedings scheduled on an expedited basis.
Sun Eagle, 23 Cl.Ct. at 482 (emphases added) (internal citations omitted). Thus, Sun Eagle does not, as stated by the dissent, support the proposition that the absence of CDA prerequisites on Maropakis’s claims of government delay does not bar its right to raise them in defense of the government's liquidated damages claim. Instead, Sun Eagle stands for the exact opposite.