GULF GROUP GENERAL
ENTERPRISES CO.
W.L.L., Plaintiff,

v.

UNITED STATES, Defendant.

No. 06–835C.

United States Court of Federal Claims.

April 22, 2011.

Iliaura Hands, Miller & Williamson LLC, New Orleans, LA, for the plaintiff. With her was Machale A. Miller, Miller & Williamson LLC, New Orleans, LA.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Deborah A. Bynum, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C. Of counsel, Stacey K. Grigsby, Lartease M. Tiffith, and Russell J. Upton, Commercial Litigation Branch, and Major Daniel J. Everett, United States Army Litigation Division, Arlington, VA.

## ORDER

HORN, J.

The defendant filed a motion to dismiss plaintiff's claim of improper contract termination imbedded within Gulf Group General Enterprises Co. W.L.L.'s (Gulf Group) second amended complaint, in Case No. 06–835C. Defendant argued that Gulf Group had failed to present the claim to the contracting officer, in violation of the Contract Disputes Act (CDA), see Pub.L. 111–350, ch. 71, 124 Stat. 3677 (Jan. 4, 2011) (formerly 41 U.S.C. § 605(a) (2006), recodified as amended at 41 U.S.C. § 7103(a)(1) (2011)) ("Each claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision."). Case No. 06–835C is the lead case of four consolidated Gulf Group cases. Defendant's motion to dismiss pertains to the following allegations in Gulf Group's recent, second amended complaint only in one of the cases, Case No. 06–835C. The pertinent portion of plaintiff's second amended complaint, at paragraph 12, in Case No. 06–835C, states:

The Government's termination of this contract was arbitrary, capricious and an abuse of discretion. Indeed, termination

was in bad faith[1] inasmuch as the purported basis for termination was a supposed security risk presented by Gulf Group that was not documented prior to, at the time of or any time subsequent to termination. Gulf Group filed an opposition to the government's motion to dismiss. This Order memorializes the decision issued to the parties orally on April 8, 2011, given the impending trial date.

Gulf Group filed two claims with the contracting officer, on October 10, 2005 and March 26, 2007, which subsequently became Case No. 06–835C in this court. The cover letter to the October 10, 2005 claim, titled Claim and Settlement Offer, was signed by Gulf Group General Manager Saud Al Tawash, and was certified by Ferdinand F. Peters, Gulf Group's counsel at the time. The Claim and Settlement Offer stated that, in furtherance of the contract, equipment and supplies were ordered and workers hired, and that Gulf Group suffered losses when the contract was cancelled for the convenience of the government. The Claim and Settlement Offer further stated that Gulf Group was informed it would be given another, larger military installation (Camp Virginia) to which it would provide camp services. The alternative procurement did not materialize, however, so Gulf Group asked for reimbursement of its costs, and also for "lost profits."

The plaintiff's Claim and Settlement Offer quoted Federal Acquisition Regulation (FAR) 49.201(a) (2005), which provides that settlement should compensate the contractor terminated for the convenience of the government for contract preparations made and work completed, as well as a reasonable allowance for profit. The Claim and Settlement Offer stated that Gulf Group had complied with the contract requirements, until its services were no longer necessary, and "[a]s a consequence it should be allowed full profit." The Claim and Settlement Offer added that contract costs, when added to anticipated profit, totaled $10,000,000.00. Citing the FAR policy at FAR 49.201(b) (2005), that the

"primary objective" in a termination for convenience is to negotiate a settlement agreement, Gulf Group offered to settle its claim for $4,544,339.84. Gulf Group also quoted FAR 49.202 (titled "Profit"), at subparagraphs (b)(7) and (b)(8): " 'In negotiating or determining profit, factors to be considered include—(7) The rate of profit that the contractor would have earned had the contract been completed; (8) The rate of profit both parties contemplated at the time the contract was negotiated....' " The language, "arbitrary and capricious," "abuse of discretion," and "bad faith," and the allegations of improper contract termination, were not included in the first, October 10, 2005, Claim and Settlement Offer to the contracting officer, and appeared for the first time in Gulf Group's second amended complaint.

Gulf Group filed its original complaint in this court in Case No. 06–835C on December 8, 2006, stating at paragraphs 4 and 11 of the complaint that the contracting officer had failed to issue a final decision within 60 days of receipt of the above described October 10, 2005 claim to the agency, and citing the CDA 60–day requirement at 41 U.S.C. § 605(c)(1) (2000). This initial complaint did not use the words "breach of contract," "arbitrary and capricious," "abuse of discretion" or "bad faith," and did not allege improper contract termination on the part of the government. Rather, the complaint stated at paragraph 8 that the contract had been cancelled "without warning or just reason, and solely for the convenience of the Government." The original complaint also stated at paragraph 9 that, as a result of the cancellation, the government was required to compensate Gulf Group fully, for preparatory expenses, and for profits Gulf Group expected to be generated for the full term of the contract.

Gulf Group's Case No. 06–835C was assigned originally to Senior Judge Loren A. Smith, who stayed the case and directed the contracting officer to issue a final decision on plaintiff's claim pursuant to 41 U.S.C.

---

1. In a conference the court held with the parties on April 8, 2011, plaintiff's counsel advised the court that, upon reflection, counsel does not wish to pursue a bad faith claim on the part of the government, but that plaintiff's counsel intends to proceed with the allegation that government officials acted arbitrarily and capriciously with respect to the cancellation of Gulf Group's contract.

§ 605(c)(5) (2006). Based on this direction, Gulf Group's present counsel in the current litigation submitted a certified claim to the contracting officer, dated March 26, 2007. The original, October 10, 2005 Claim and Settlement Offer, as well as the initial, December 8, 2006 complaint in this court, were attached to Gulf Group's March 26, 2007 claim. This second claim to the agency withdrew the $4,544,339.84 settlement offer in the October 10, 2005 claim, and submitted a claim in the amount of $7,000,000.00. This second claim to the agency also did not use the language "arbitrary and capricious," "abuse of discretion" or "bad faith," or allege improper contract termination; however, the claim did seek the profits Gulf Group expected to receive had the government not "breached its contract."

On May 21, 2007, the contracting officer issued a final decision on Gulf Group's claim, awarding Gulf Group $33,053.00. Senior Judge Smith lifted the stay, and directed that Gulf Group file an amended complaint, which Gulf Group did on June 29, 2007. This first amended complaint stated at paragraph 10 that the government had cancelled the contract "without just cause," and on the basis of an "arbitrary" decision, and that the government was liable for preparatory costs, plus profits anticipated under the contract, in the amount of $2,682,160.86. The language "abuse of discretion" and "bad faith" is not found in the first amended complaint, nor are any allegations concerning improper contract termination.

On February 15, 2011,[2] Gulf Group filed its second amended complaint in Case No. 06–835C in this court, which is the focus of defendant's motion to dismiss. This second amended complaint, at paragraph 10, states that the "Government's termination of the contract was not properly based on convenience." At paragraph 12, of the second amended complaint, Gulf Group alleged improper contract termination in these words:

> The Government's termination of this contract was arbitrary, capricious and an abuse of discretion. Indeed, termination

was in bad faith inasmuch as the purported basis for termination was a supposed security risk presented by Gulf Group that was not documented prior to, at the time of or any time subsequent to termination.

Gulf Group again revised its damages claim in this court upward to request $3,463,287.57.

■ A contractor's claim must be submitted to the contracting officer under the CDA. *See* 41 U.S.C. § 7103(a)(1). The CDA, however, does not define "claim." Therefore, courts look to the FAR, which defines "claim" as a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under of relating to the contract." FAR 2.101 ("Definitions") (current as of Mar. 2011).

The United States Court of Appeals for the Federal Circuit has stated that: "While a CDA claim need not be submitted in any particular form or use any particular wording, it must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir.2010) (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987)); *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d at 1328 ("holding that submissions qualified as CDA claims when the contractor 'asserted in writing and with sufficient specificity a right to additional compensation' and 'the contractor communicated his desire for a contracting officer decision'" (quoting *Transamerica Ins. Corp., Inc. v. United States*, 973 F.2d 1572, 1579 (Fed.Cir.1992), *overruled in part*, on other grounds by *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.) *(en banc), reh'g denied* (Fed.Cir.1995))).

■ Plaintiff bears the burden of proving that this court possesses jurisdiction over the plaintiff's claims by a preponderance of the evidence, and waivers of sovereign immunity

---

2. During discovery, proceedings in the case were stayed pending ancillary criminal proceedings involving potential witnesses in this case, origi-

nally by Senior Judge Smith, then later regarding all four consolidated cases by the undersigned Judge.

are construed narrowly. *See Baldwin v. United States*, 95 Fed.Cl. 238, 241 (2010) (citing *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed.Cir.2001) (burden of proof); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) (preponderance of the evidence); *Radioshack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed.Cir. 2009) (sovereign immunity); and *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (*en banc*) (sovereign immunity)).

■ As noted above, the language "arbitrary and capricious," "abuse of discretion," and "bad faith," or any allegations of improper contract termination, were not contained in Gulf Group's first, October 10, 2005, Claim and Settlement Offer to the contracting officer. The thrust of that claim was termination costs for the termination for the convenience of the government, which included reasonable, and negotiable, profits. Gulf Group pointed out in its October 10, 2005 Claim and Settlement Offer that the FAR instructs the government to consider the negotiated profit rate and the profit the contractor would have earned if the contract had been completed when negotiating a settlement of termination costs. The second claim to the contracting officer, dated March 26, 2007, attached the first claim, raised the amount claimed from the agency, and like the first claim, did not use the language "arbitrary and capricious," "abuse of discretion," or "bad faith," or allege improper termination for convenience. Similarly, the initial complaint filed in this court did not use the language "arbitrary and capricious," "abuse of discretion," or "bad faith," and did not allege improper termination for convenience. Plaintiff's first amended complaint charged cancellation of the contract by the government, "without just cause," and on the basis of an "arbitrary" decision. More recently, Gulf Group's language included in the second amended complaint alleges improper contract termination, arbitrary and capricious conduct, abuse of discretion and bad faith on the part of government officials, which were not adequately placed before the agency contracting officer, in either of the two claims to the agency, as the CDA requires.

Gulf Group argues that a "knowledgeable," "discerning," contracting officer, when presented with the October 10, 2005 Claim and Settlement Offer, and the March 26, 2007 claim, should have known that plaintiff was not challenging an ordinary termination for the convenience of the government. In Gulf Group's words, something was "dreadfully awry" in the contracting office, and the claim "necessarily implicated arbitrary and capricious conduct and abuse of discretion" because of the demand for anticipated profits. Gulf Group's demand for anticipatory profits, however, should not be considered an adequate signal to the contracting officer that something was amiss, given the guidance at FAR 49.202(b)(7) and (b)(8), that the parties, when negotiating a normal termination settlement, should consider the rate of profit the parties contemplated when the contract was negotiated and the profits the contractor would have earned on the completed contract (or BPA call in this case). Moreover, given this FAR 49.202(b)(7) and (b)(8) guidance, it is not surprising that, even for a routine request for termination costs pursuant to a termination for convenience, a contractor would ask for the profits it would have made had the contract gone to completion, as an initial negotiating position.

Gulf Group's argument that its claims may be derived by implication, if only the contracting officer is "knowledgeable" and "discerning," requires too much of contracting officers, and contravenes the requirement that claimants must provide the agency with a " 'clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.' " *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d at 1327 (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d at 592). The government was not given adequate notice of the allegations of improper contract termination, which Gulf Group now makes in its second amended complaint, or resulting allegations of bad faith and abuse of discretion and arbitrary and capricious conduct on the part of government officials. Gulf Group does not meet the United States Court of Appeals for the Federal Circuit test in *M. Maropakis Carpentry, Inc. v. United States*. In addressing the case authority,

190

Gulf Group states in its response: "We have been unable to determine when the principle *Maropakis* recited—adequate notice of the basis of the claim—crept into the jurisprudence, bearing in mind that it is mentioned in a number of cases but never with any explanation of what measures must be taken by the claimant in writing its claim to satisfy it." To the contrary, compliance is not as difficult as Gulf Group makes it out to be. The "measure" that Gulf Group must take, if it wishes to pursue an allegation of improper contract termination, is to comply with the CDA and place this matter before the agency contracting officer.

## CONCLUSION

The matter raised by defendant is jurisdictional. Defendant's motion to dismiss is **GRANTED.** The court possesses no jurisdiction over the allegations in the plaintiff's second amended complaint concerning improper contract termination.

**IT IS SO ORDERED.**