# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Teledyne Brown Engineering, Inc. ) | ASBCA No. 58636 |
| ) | |
| Under Contract No. W911SR-04-D-0011 ) | |

APPEARANCES FOR THE APPELLANT:    Jon D. Levin, Esq.
                                  William R. Lunsford, Esq.
                                    Maynard, Cooper & Gale, P.C.
                                    Huntsville, AL

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
                                    Army Chief Trial Attorney
                                    CPT Ahsan M. Nasar, JA
                                    Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND APPELLANT'S MOTION TO STRIKE

This deemed denial appeal concerns a claim by Teledyne Brown Engineering, Inc. (Teledyne) to a greater fixed fee under an indefinite delivery/indefinite quantity cost-plus-fixed-fee contract. The government has moved for summary judgment, contending that Teledyne is not entitled to the full fixed fee because only approximately one-half the total cost ceiling contemplated by the contract was reached. Hence, the government maintains, Teledyne is only entitled to the percentage of the fee corresponding to the percentage of funding actually allocated to the contract. Teledyne opposes the motion, arguing chiefly that it performed all work required and is entitled to the entire fixed fee. Teledyne has also moved to strike the government's motion for summary judgment as noncompliant with FED. R. CIV. P. 56. We deny the motion for summary judgment and dismiss the motion to strike as moot.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

1. By date of 13 July 2004, the U.S. Army Contracting Command, Aberdeen Proving Ground (Army or government) awarded Teledyne Contract No. W911SR-04-D-0011 (the contract) as a multiple award task order contract to provide the Edgewood Chemical Biological Center Engineering Directorate with engineering, development, technical management, and administrative support (R4, tab 1 at P1, P5, P21).

2. The contract provided for the negotiation of task orders on a cost-plus-fixed-fee basis "when the uncertainties of performing a work statement are such that the cost of

performance cannot be estimated with sufficient confidence" (R4, tab 1 at P3). The contract incorporated by reference FAR 52.232-22, LIMITATION OF FUNDS (APR 1984) (*id.* at P20). The contract also contained section B, paragraph B.4, PROFIT OR FEE CEILING, which provided that "[t]he Fee or Profit will be negotiated and obligated under individual Task Orders" (*id.* at P4).

3. By date of 4 December 2009, the Army issued, and Teledyne accepted, Task Order 0009 on a cost-plus-fixed-fee basis to provide advanced design and manufacturing division support (R4, tab 3 at 1-2). The Task Order does not state whether it is either a completion form task order under FAR 16.306(d)(1) or a term form task order under FAR 16.306(d)(2).

4. In section C, paragraph 3.0 of Task Order 0009, REQUIREMENTS, the Army set forth the work to be performed. Paragraph 3.3 provided that "[t]he contractor shall design, engineer, prototype, [and] assist with the preparation of and/or modify [Computer Aided Design] models/drawings for complex systems and components in support of a wide variety of engineering development projects." (R4, tab 3 at 3) Paragraph 3.5 provided that Teledyne would:

> [P]rovide support with the fabrication, design and development, operations, testing and fielding of systems and equipment to assist the research community. Because the Government cannot accurately predict the types of projects (i.e., the specific specialties required and their level of effort), the contractor shall provide coverage for all technical specialties and capabilities as indicated in each labor category described below. Staffing in all labor categories will not be required at task initiation; however, it is anticipated that work load over the period of performance will use the specialties identified.

(R4, tab 3, at 4) Paragraph 3.5 then contained a table organized by labor category, historical number of hours, and proposed hours for this task (*id.*)

5. Task Order 0009 was to be incrementally funded. As originally issued, it provided for a maximum cost of $6,094,332, and a fixed fee of $487,547, for a total maximum cost and fee of $6,581,879 (R4, tab 3 at 2).

6. It appears undisputed that the parties executed eleven bilateral modifications of Task Order 0009, variously increasing or decreasing funding, or setting forth change orders (R4, tabs 4-12, 14, 15). The government acknowledges that it has not located a copy of an additional modification – Modification No. 10 – signed by Teledyne (R4, tab 13 at 1). Nonetheless, it is undisputed that, as a result of all twelve modifications, the allocated cost, fixed fee and time were added, so that the total amount ultimately allocated was $10,288,074,

the total fixed fee was $823,046, and the performance time was to end on 29 July 2011 (R4, tab 15 at 2).

7. Bilateral Modification No. 01 of Task Order 0009 appears relevant to the present issues (R4, tab 4 at 1). The parties there agreed that Teledyne would produce 360 Long Zee Plates, which were described as components of the HUSKY Bar Vehicle Armor Integration Kits, to be delivered by 14 January 2010 (*id*. at 3). The total funded amount of Task Order 009 was increased by $500,000 (*id*. at 4).

8. It is undisputed that, of the $823,046 in total allocated fixed fee, the Army has paid Teledyne $416,480.52 (compl. ¶ 18; Government's Motion for Summary Judgment (motion) at 5).

9. By letter dated 24 April 2012, Teledyne submitted a certified claim to the contracting officer for an additional $406,565.86 in fixed fee funding to achieve "the contract value for fixed fee" (R4, tab 18). After the contracting officer failed to render a decision on its claim for almost a year, Teledyne filed its notice of appeal dated 23 April 2013.

10. With its opposition to the Army's motion, Teledyne has submitted the declaration of Mark Gradkowski, its Vice-President of Energy and Environment. He declares that Teledyne "was tasked with delivering a number of products and services over the course of performance [of] Task Order [0009]. [Teledyne] completed delivery of each item requested of it.... Our work under the contract was timely completed as of July 29, 2011." (Gradkowski decl. ¶ 3) Mr. Gradkowski also declares that "[t]he Army expressed no dissatisfaction with our deliverables or the quality of our labor. It accepted each delivery without complaint to us." (*Id*. ¶ 4)

11. With its opposition to the Army's motion, Teledyne has also submitted the declaration of Jon D. Levin, one of its counsel in this appeal. Mr. Levin asserts that Teledyne needs discovery "in order to fully oppose the Government's Motion for Summary Judgment." In particular, Teledyne needs to depose all contracting officers, and all contracting officer technical representatives, who worked on Task Order 0009, as well as all program managers and their subordinates who oversaw task order performance and received deliverables. Mr. Levin also declares that Teledyne needs document discovery regarding the terms of the task order and all modifications, the fixed fee, the nature and character of all deliverables and their receipt and acceptance, and the completion of the task order. (Levin decl. ¶¶ 2, 7-8)

12. In addition to Task Order 0009, the record contains Task Order 0006. It contains Note 1, TYPE OF TASK ORDER, which provides that "[t]his is a cost plus fixed fee (term form) task order pursuant to FAR 16.306(d)(2)." (R4, tab 2 at 1, 3)

13. The record reflects that the Army filed its motion before it filed its answer, and does not reflect that any discovery has been conducted.

DECISION

## A.    *Motion for Summary Judgment*

In moving for summary judgment, the Army's chief argument is that it never reached the total cost ceiling contemplated by the contract, and hence Teledyne is not entitled to the full fixed fee. The Army states its syllogism as follows:

> The expected cost ceiling on Task Order 0009 for complete performance was $11,111,120.00. The government, however, only incrementally funded $5,622,487.00 of this amount, which represents 50.6% of the total expected cost ceiling of $11,111,120.00. It logically follows that only about 50.6% of the work anticipated under the contract could have been performed. [The Limitation of Funds clause] provides that when a cost contract is not fully funded, the contractor is entitled only to the earned percentage of its fixed fee....

(Motion at 5) (citation omitted) The Army applies the 50.6 percent figure to the total fixed fee amount of $823,046 (*see* statement 8), and concludes that the resulting figure is $416,461.28, which is $19.24 *less* than the $416,480.52 fee that Teledyne has admittedly received (*id.*).

In opposing the motion, Teledyne insists that the dispositive consideration is that it completed all work under Task Order 0009. Hence, Teledyne maintains, "the Government owes it the agreed upon fixed fee for completion of all tasks assigned under the Task Order" (Teledyne's Response in Opposition to Motion for Summary Judgment and Motion to Strike (response and motion to strike) at 12).

In its reply, the Army insists that "[t]he contract was a term form [cost-plus-fixed-fee] contract" (Government's Reply to Appellant's Response in Opposition to Motion for Summary Judgment and Motion to Strike (gov't reply brief) at 1). The Army asserts that "[t]o prevail on our motion, all the government needs to establish is that Task Order 0009 was a term form [cost-plus-fixed-fee] contract which was never fully funded to the stated cost ceiling" (*id.* at 9). Hence, the Army maintains, "[Teledyne is] only entitled [to] its full fixed fee if it performed the agreed-upon level of effort for the agreed-upon time period" (*id.* at 1). The Army asserts that "the agreed-upon level of effort was never fully funded, thus [Teledyne] never fully performed the level of effort, and hence the full fixed fee is not payable" (*id.*). In addition, the Army also tells us that portions of Teledyne's statement of undisputed facts "are clearly erroneous and we dispute them," providing examples (*id.* at 13-14).

In its sur-reply, Teledyne first contends that the motion should be denied because material facts are in dispute (Teledyne Brown Engineering, Inc's Sur-Reply to the Motion for

Summary Judgment and Reply in Support of Its Motion to Strike at 3-5). Teledyne further argues that the Army erroneously reads relevant FAR provisions (*id*. at 6-10).

Our evaluation of the Army's motion is guided by the familiar canon that summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). "Our task is not to resolve factual disputes, but to ascertain whether material disputes of fact – triable issues – are present." *Conner Bros. Construction Co.*, ASBCA No. 54109, 04-2 BCA ¶ 32,784 at 162,143, *aff'd*, *Conner Bros. Construction Co. v. Geren*, 550 F.3d 1368 (Fed. Cir. 2008) quoting *John C. Grimberg Co.*, ASBCA No. 51693, 99-2 BCA ¶ 30,572 at 150,969. Once the movant meets its burden of showing the lack of a genuine issue of material fact, the non-moving party must set out specific facts showing the existence of a genuine issue of material fact; conclusory statements and bare assertions are insufficient. *Mingus Constructors*, 812 F.2d at 1390-91.

"A cost-plus-fixed-fee contract may take one of two basic forms – completion or term." FAR 16.306(d). With a completion form contract, the government "describes the scope of work by stating a definite goal or target and specifying an end product." FAR 16.306(d)(1). Typically, "the contractor [must] complete and deliver the specified end product (*e.g.*, a final report of research accomplishing the goal or target) within the estimated cost, if possible, as a condition for payment of the entire fixed fee." *Id*. By contrast, a term form cost-plus-fixed-fee contract "describes the scope of work in general terms and obligates the contractor to devote a specified level of effort for a stated [period of time]." FAR 16.306(d)(2). With such a contract, "if the performance is considered satisfactory by the Government, the fixed fee is payable at the expiration of the agreed-upon period, upon [the] contractor['s] statement that the [specified] level of effort...has been expended in performing the contract work." *Id*.

Of the two types, the FAR expresses a preference for completion form contracts. It provides that, "[b]ecause of the differences in obligation assumed by the contractor, the completion form is preferred over the term form whenever the work, or specific milestones for the work, can be defined well enough to permit development of estimates within which the contractor can be expected to complete the work." FAR 16.306(d)(3). The FAR prohibits the use of the term form contract "unless the contractor is obligated by the contract to provide a specific level of effort within a definite time period." FAR 16.306(d)(4).

Given the foregoing principles, we deny the government's motion for summary judgment. Taking the government's opening and reply briefs together, the motion is based on two principal propositions: (1) there are no genuine issues of material fact; and (2) the contract was a completion form cost-plus-fixed-fee contract.

With respect to the first proposition, we conclude that there are genuine issues of material fact, precluding summary judgment. The Army's core argument is the deduction that Teledyne is only entitled to half the fixed fee because "[i]t logically follows that only about

5

50.6% of the work anticipated under the contract could have been performed" because only that percentage of the expected ceiling cost was funded (motion at 5). Teledyne has also tendered an uncontroverted declaration that it "completed delivery of each item [of products and services] requested of it," and did so by the completion date (statement 10). In these circumstances, for us to look no further than the Army's mathematical calculation would contravene the canon that, on summary judgment, we must draw all reasonable factual inferences in favor of the non-moving party, which at present is Teledyne. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *The Boeing Co.*, ASBCA No. 54853, 11-2 BCA ¶ 34,813 at 171,325.

In addition, other considerations call for development of a fuller record. First, the present record cannot be said to resolve the parties' dispute over the form of the contract. Section C, paragraph 3.5 of Task Order 0009 appears to be consistent with the "specified level of effort for a stated [period of time]" characteristic of a term form cost-plus-fixed-fee contract described in FAR 16.306(d)(2). Nonetheless, by Modification No. 01, the parties agreed that Teledyne would produce 360 armor plates by the specified delivery date (statement 7). Such a requirement would appear consistent with the hallmark of a completion form cost-plus-fixed-fee contract, which "stat[es] a definite goal or target and specif[ies] an end product." FAR 16.306(d)(1). "A better developed record, including evidence of the parties' contemporaneous interpretation…will enable us to address these issues." *L-3 Services, Inc., Unidyne Division*, ASBCA Nos. 56304, 56335, 09-2 BCA ¶ 34,156 at 168,849. Second, of the two task orders appearing in the record, Task Order 006 expressly provided that "[t]his is a cost plus fixed fee (term form) task order pursuant to FAR 16.306(d)(2)" (statement 12), but Task Order 0009 did not (statement 3). A fuller record might also afford insight into the reason, if any, for this difference. Third, the sparse record before us reveals no realistic opportunity for discovery (statement 13). The record does, however, contain a plea by Teledyne to conduct both document and deposition discovery (statement 11). Teledyne has supported its request with a particularized affidavit setting forth the areas that it needs to pursue in discovery (*id.*). In this posture of the case, such a request should be freely granted. *See Siggers v. Campbell*, 652 F.3d 681, 695-96 (6th Cir. 2011) (summarizing rule). Finally, a fuller record may also allow us to determine whether the Army's interpretation of Task Order 0009 would result in a prohibited cost-plus-a-percentage-of-cost contract. *See* 10 U.S.C. § 2306(a), 41 U.S.C. § 3905(a), and FAR 16.102(c).

B.    *Motion to Strike*

Teledyne's motion to strike is based upon contentions that the Army failed to comply with FED. R. CIV. P. 56 in multiple particulars in its motion for summary judgment (response and motion to strike at 7-9). The Army opposes (gov't reply br. at 10).

We dismiss Teledyne's motion to strike as moot, inasmuch as we have already denied the Army's motion for summary judgment, to which the motion to strike is directed.

6

## CONCLUSION

The government's motion for summary judgment is denied. Appellant's motion to strike is dismissed as moot.

Dated: 6 January 2014

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

CHERYL L. SCOTT
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58636, Appeal of Teledyne Brown Engineering, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals