.ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Hejran Hejrat Co. LTD ) | ASBCA No. 61234 |
| ) | |
| Under Contract No. W5J9JE-11-C-0115 ) | |

APPEARANCE FOR THE APPELLANT:      Joseph A. Hennessey, Esq.
                                   Chevy Chase, MD

APPEARANCES FOR THE GOVERNMENT:    Thomas J. Warren, Esq.
                                     Acting Engineer Chief Trial Attorney
                                   Pietro O. Mistretta, Esq.
                                   Aimee L. Rider, Esq.
                                     Engineer Trial Attorneys
                                     U.S. Army Engineer District, Middle East
                                     Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE KINNER ON
THE GOVERNMENT'S MOTION TO DISMISS

        The Army Corps of Engineers (the Corps) moves to dismiss the appeal of Hejran
Hejrat Co. LTD (HHL) for its failure to comply with the requirements for our jurisdiction
pursuant to the Contract Disputes Act (CDA) 41 U.S.C. § 7103(b)(1).

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

        After several rounds of price negotiations, the Corps awarded HHL a contract
for lease of armored utility vehicles for use in Afghanistan (compl. ¶¶ 17-20; R4,
tab 10). Corps personnel scheduled meetings to prepare for implementation of the
contract (compl. ¶¶ 25-26, 28). Prior to the second scheduled meeting, HHL was
directed by the contracting officer to suspend all work because the contract was
suspended, apparently due to a bid protest (compl. ¶¶ 33, 35; R4, tab 30). The Corps
took corrective action in response to the protest, which included obtaining resubmission
of proposals without re-solicitation (compl. ¶ 40). On 8 August 2011, HHL was again
awarded the contract, although the original award had only been suspended (compl.
¶ 50; R4, tab 32). HHL informed the contracting officer that it incurred additional costs
due to the time necessary for the corrective action, the reduction of the contract price,
and a delay in the issuance of the notice to proceed (compl. ¶ 54). There is no evidence
whether the Corps considered HHL's concerns regarding additional costs. Instead,
Modification No. P00001 was issued 14 August 2011 (compl. ¶ 53; R4, tab 11). The
unilateral modification lifted the prior award suspension; decreased the contract price

from $9,364,707 to $8,787,800; revised the performance work statement to reflect delays in government furnished equipment; declared that an equitable adjustment due to the suspension was not required and that the Corps was absolved of any claims due to that suspension (*id.*).

Before the end of the performance period, in July 2012, HHL was informed the Corps would not exercise an option on the contract (compl. ¶ 68; R4, tab 50). When asked for a final invoice and a release of claims to close out the contract, HHL informed the Corps that it was due additional payments and some vehicles were missing (compl. ¶ 74). HHL's requests for additional payment were made by submitting invoices (compl. ¶¶ 74, 77; app. supp. R4, tab 79 at 451; R4, tabs 78-80). The invoices requested $4,137,964 of additional compensation (compl. ¶¶ 77, 82). On 12 September 2013, a contracting officer, Sara Jackets, responded to HHL's three invoices:

> This letter is in response to your three (3) invoices HHL-USACE/015, HHL-USACE/016 and HHL-USACE/016 submitted for contract W5J9JE-11-C-0115 on 22 August 2013. Although you used the word 'claim' and 'compensation' in your email and invoices, I have treated this as a request for equitable adjustment (REA) because it is not clear that you were seeking a contracting officer's final decision.

(R4, tab 59) Ms. Jackets asked HHL to inform her if the company intended to submit a claim or sought a contracting officer's final decision (*id.*). In a 31 January 2014 email, HHL specifically informed the Corps that it had not intended the email submitting its three invoices to be considered an REA (R4, tab 64 at 8-9). With respect to the 31 January 2014 email, however, HHL explained the purpose of that email: "We therefore ask you to treat this email together with the supporting documents as a REA. In the event that you decide to treat this email as REA and still reject our request for the adjustment of payments, we would then proceed with issuing a certified claim." (*Id.*) The email contained descriptions of the grounds for additional payment: "1. Compensation of cost reduction due to unfair reposting of solicitation and divulging of our company's awarded price and the loss of rental fee compensation for a period of two months"; "2. Compensation as result of modification # 4, Add and Remove Clause which resulted in early return of vehicles"; "3. Compensation Cost for 4 missing Armored vehicles plus rental fee for the 4 vehicle for a period 16 months"; "4. Revision of invoices for leasing"; "5. Cost for Unscheduled Maintenance" (*id.* at 9-12). HHL emphasized its intent that the email, with the submitted supporting documentation, be considered an REA: "We reiterate that this email together with the supporting documents be treated as a REA" (*id.* at 13). HHL did not request a contracting officer's final decision or provide a certification with that email (*id.*). HHL sent a similar email, forwarding revised invoices, on 16 April 2014 (compl. ¶ 82; R4, tab 64 at 6).

2

Notwithstanding its 31 January and 16 April 2014 emails, HHL asserts that it did not attempt to submit an REA until March 2015 (compl. ¶¶ 81, 83). In an email on 5 March 2015, HHL requested additional payment for the same five reasons, providing similar statements of fact and argument for each, primarily expanding its argument for its first ground (app. supp. R4, tab 98). HHL also submitted a "Sworn Statement in reference to (REA)" (app. supp. R4, tab 97). The swor[n] statement was executed by Dr. Amarkhil, the deputy managing director of HHL. In that statement Dr. Amarkhil provides a signed "affidavit" that the following statement is true: "**The clauses and points reflected in REA (Request for Equitable Adjustment) in reference to contract # W5J9JE-11-C-0115, to the best of my knowledge are true.**" (*Id.*, emphasis in original)

In May 2015, HHL contacted the original contracting officer, Daniel Portillo, by email because it had not received a response to its REA (compl. ¶ 84). Mr. Portillo responded by email telling HHL "We should be providing you the Contracting Officer's final decision by the end of this week" (app. supp. R4, tab 101). Mr. Portillo immediately followed that message with an email that contained a PDF document titled "Response to REA" (app. supp. R4, tab 100). Whatever Mr. Portillo's response, HHL understood it to be an unsigned answer to its 16 April 2014 email, not a response to its "formal" REA submitted 5 March 2015 (compl. ¶ 86; R4, tab 66). Mr. Portillo's response rejected HHL's invoices, but did not contain any indication that it should be considered a contracting officer's final decision (R4, tab 66). In either event, HHL again clarified that neither its January or its March email were intended to be a claim (app. supp. R4, tab 107) ("I would like to know if there is any time frame during which we could accept the final decision or submit our claim."). Mr. Portillo informed HHL that it "may have a claim on the things discussed in our decision" (app. supp. R4, tab 108).

HHL continued to contact the Corps regarding its REA, sometimes through unusual sources (compl. ¶¶ 95-99 (*e.g.* HHL sent messages to Corps headquarters via Facebook.)). In February 2016, Ms. Cherita Williams assumed responsibility for HHL's contract (compl. ¶ 100). HHL pursued a decision from Ms. Williams. In her decision on 26 March 2017, she found no merit in the REA and advised HHL to follow the procedure in the contract's disputes clause (R4, tab 2 at 6). The government did not issue a contracting officer's final decision in accordance with the CDA on the REA. HHL responded to Ms. Williams' 29 March 2017 decision to express its disagreement and stated "we will refer to FAR clause 52.233-1, Disputes (Jul 2002) for our rights under the subject contract" (R4, tab 77). In its appeal to the Board, HHL identified no final decision on the subject of the appeal.

## DECISION

While a valid claim under the CDA must contain "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim," the claim need not take any particular form or use any particular wording. *Northrop Grumman Computing Systems, Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013) (citing *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* HHL's submission of its requests for upward adjustment of the contract price also identified a dollar amount requested for each. In those submissions HHL adequately described five grounds why it is owed more money, and the sum certain being requested for each. But those are only two of four required elements of a claim. In addition to explaining the reason for the claim and the amount requested, a claim must also include a request for a final decision from the contracting officer and a certification if the amount sought is greater than $100,000. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-29 (Fed. Cir. 2010). Although we are sympathetic to HHL, its continued express disavowal of the notion that it sought a contracting officer's final decision prevents us from finding that its communications constituted a CDA claim.

At no point, in six years of communication with the Corps, has HHL requested a contracting officer's final decision. Making such a request "does not require an explicit request for a final decision, as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met." *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996). Yet, HHL has avoided language that can fairly be interpreted as a request for a final decision. Contracting officer Jackets asked HHL if the invoices it submitted were intended to be a claim, and if HHL was requesting a final decision. In response, HHL insisted the Corps should consider its invoices an REA.[*] Thus, when given the chance, it declined to ask for a final decision or identify the invoices, or any of its submissions, as a claim. HHL demonstrated that it understood the significance of the contracting officer's inquiry. She informed HHL that more was required for a claim than the REA it submitted. Corps personnel directed HHL to the resource in its contract, the disputes clause 48 FAR 52.233-1 (R4, tab 10 at 31), that provides instructions on how to submit a claim. HHL repeatedly acknowledged that direction and stated that it would follow the procedure of the disputes clause, but did not.

---

[*] *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) provides that even a document captioned as an REA may constitute a claim so long as the necessary characteristics of a claim are met. Here, HHL's problem is not merely the REA label it used, but that, under these circumstances, HHL disclaimed its desire for a COFD.

HHL counters that the Corps unambiguously treated its submissions as a claim (app. opp'n at 13, ¶ 66). HHL points to the statements by a contract specialist that characterized its invoices as a claim (*id.* at 6, ¶ 28). Likewise, HHL refers to statements by contracting officer Mr. Portillo that he would send a final decision, and that he sent a document labelled final decision, to support jurisdiction for its appeal (*id.* at 8, ¶¶ 34-35). These references do not help HHL's argument. A contracting officer's characterization of a submission by a contractor cannot establish that a CDA claim has been submitted. There can be no contracting officer's final decision on a claim if the contractor has not requested that decision from the contracting officer. 41 U.S.C. § 7103(a), (b); *Maropakis*, 609 F.3d at 1327 (citing *Ellett*, 93 F.3d at 1543); *Engineered Demolition, Inc.*, ASBCA No. 54924, 06-1 BCA ¶ 33,125. Mr. Portillo could not issue a final decision because HHL did not request a contracting officer decision.

We note that the government has argued that another basis for finding lack of a valid claim in the absence of a proper certification. To be sure, the certification provided by HHL was inadequate to the requirements of the CDA, however, HHL did make an attempt to include a certification here (one that tracks closely with the REA certification requirements) and in the case of a defective certification, we maintain jurisdiction over the appeal so long as the defects are remedied prior to final judgment. 41 U.S.C. § 7103(b)(3); *Tokyo Co.*, ASBCA No. 59059, 14-1 BCA ¶ 35,590 at 174,392.

## CONCLUSION

The government's motion is granted and the appeal is dismissed.

Dated: 23 April 2018

DONALD E. KINNER
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

5

I concur                                         I concur

RICHARD SHACKLEFORD                              J. REID PROUTY
Administrative Judge                             Administrative Judge
Acting Chairman                                  Vice Chairman
Armed Services Board                             Armed Services Board
of Contract Appeals                              of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61234, Appeal of Hejran Hejrat Co. LTD, rendered in conformance with the Board's Charter.


Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6