# United States Court of Appeals for the Federal Circuit

_____

**HEJRAN HEJRAT CO. LTD,**
*Appellant*

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS,**
*Appellee*

_____

2018-2206

_____

Appeal from the Armed Services Board of Contract Appeals in No. 61234, Administrative Judge Donald Evan Kinner, Administrative Judge J. Reid Prouty, Administrative Judge Richard Shackleford.

_____

Decided: July 17, 2019

_____

JOSEPH ALOYSIUS HENNESSEY, The Law Office of Joseph Hennessey, LLC, Chevy Chase, MD, argued for appellant.

JESSICA R. TOPLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

_____

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge.*

Hejran Hejrat Co. Ltd. ("HHL") appeals from a decision by the Armed Services Board of Contract Appeals ("Board") dismissing HHL's case for lack of jurisdiction. Because we conclude that there was a request for a final decision by a contracting officer and a final decision entered by the contracting officer, we reverse and remand for further proceedings.

## BACKGROUND

This appeal arises from HHL's 2011 contract with the United States Army Corps of Engineers ("USACE") to provide transportation services in Afghanistan. After the contract expired, HHL requested additional compensation from the USACE based on alleged violations of the contract: suspension of work, changes to the contract requirements, and termination of the original contract. After various preliminary submissions, on March 5, 2015, HHL submitted a document entitled "Request for Equitable Adjustment (REA)" with a sworn statement by HHL's Deputy Managing Director having "full management [authority] to . . . close out . . . the contract." J.A. 70. In that submission, HHL requested that the submission be "treated as a[n] REA," J.A. 74, and requested $4,137,964 in compensation. The contracting officer denied HHL's request on March 26, 2017, in what the contracting officer characterized as the "Government's final determination in this matter." J.A. 116. HHL appealed the decision, but the Board concluded that it did not have jurisdiction because "[a]t no point, in six years of communication with the [USACE], has HHL requested a contracting officer's final decision." J.A. 4.

HHL appealed to our court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10). We review the Board's

determination of its jurisdiction de novo. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).

## DISCUSSION

In order for the Board to have jurisdiction, there must be a final decision by a contracting officer on a claim. *Parsons Glob. Servs. v. McHugh*, 677 F.3d 1166, 1170 (Fed. Cir. 2012) (citing 41 U.S.C. § 7103). The issue on appeal is whether HHL requested a contracting officer's final decision on a claim, such that the officer's denial constituted a final decision that supported the Board's jurisdiction.

The statute provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). Thus, in order to constitute a claim a contractor must request a final decision by a contracting officer. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellet Const. Co., v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996)) ("The CDA . . . requires that a claim indicate to the contracting officer that the contractor is requesting a final decision.").

"[W]e evaluate whether a particular request for payment amounts to a claim based on the [Federal Acquisition Regulations (FARs),] . . . the language of the contract in dispute, and the facts of each case." *Parsons*, 677 F.3d at 1170. Under the relevant FAR, a claim is defined as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in sum certain." FAR 52.233-1(c) (2002).

HHL contends that its March 5, 2015, submission constituted a claim within the meaning of the CDA. There is no dispute that HHL's March 5 submission was under the FAR a "written demand . . . seeking, as a matter of right, the payment of money in sum certain." *Id.* Indeed, the Board found that in its submissions "HHL adequately

described five grounds why it is owed more money, and the sum certain being requested for each." J.A. 4.

On appeal the government makes three arguments as to why HHL's submission did not constitute a request for a final decision. First, the government's "[f]oremost" argument is that "HHL's March 5, 2015, submission is styled <u>as a[n] REA, not as a claim</u>. HHL also expressly requested that the document be 'treated as an REA.'" Gov't Br. at 12 (internal citations omitted) (emphasis added). The government's argument that an REA cannot constitute a claim is directly contrary to this court's en banc decision in *Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed. Cir. 1995) (en banc), and subsequent cases. Just as in the current appeal, in *Reflectone* "[the contractor's] REA satisfie[d] all the requirements listed for a [Contract Disputes Act (CDA)] 'claim' according to the first sentence of FAR [52.233-1(c)]," and thus we "conclude[d] that the Board ha[d] jurisdiction to review the [contracting officer]'s denial of [the contractor's] REA." *Id.* at 1578.[1]

Second, the government argues that "the [March 5] document fails to include any language requesting a final decision." Gov't Br. at 12. Although the government agrees that magic words are not required under our cases, the government's position appears to be that a contractor must

---

[1]     *See also, e.g., Tip Top Constr., Inc. v. Donahoe*, 695 F.3d 1276, 1279 (Fed. Cir. 2012) (treating the contractor's REA as a claim); *Daewoo Eng'g & Constr. Co. v. United States*, 557 F.3d 1332, 1334 (Fed. Cir. 2009) (treating the contractor's REA as a claim); *Propellex Corp. v. Brownlee*, 342 F.3d 1335, 1337–38 (Fed. Cir. 2003) (noting the contracting officer's denial of an REA was the relevant final decision that was appealed to the Board); *Oman-Fischbach Int'l (JV) v. Pirie*, 276 F.3d 1380, 1383 (Fed. Cir. 2002) (noting that the contracting officer denied the contractor's REA, which was treated as a denied claim).

include particular words in its submission in order to constitute a request for a contracting officer's final decision. This argument is also squarely inconsistent with our caselaw, which recognizes that "a CDA claim need not be submitted in any particular form or use any particular wording," *Maropakis*, 609 F.3d at 1327, so long as it has "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim," *id.* (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)); s*ee, e.g.*, *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015); *Parsons*, 677 F.3d at 1170; *Ellett*, 93 F.3d at 1542.

Under our caselaw, HHL's March 5 submission constitutes a request for a final decision on a claim. In the March 5 submission, HHL requested that the contracting officer provide specific amounts of compensation for each of the alleged grounds. HHL submitted a sworn statement attesting to the truth of the submission, included detailed factual bases for its alleged losses, and claimed a sum certain based on the losses. This submission bears all of the hallmarks of a request for a final decision on a claim, and "[t]his court is loathe to believe that in this case a reasonable contractor would submit to the contracting officer a letter containing a payment request after a dispute had arisen solely for the contracting officer's information and without at the very least an implied request that the contracting officer make a decision as to entitlement. Any other finding offends logic." *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1578 (Fed. Cir. 1992), *overruled in part by Reflectone*, 60 F.3d at 1579 & n.10.

Third, the government argues that the March 5 submission is not a request for a final decision because HHL expressly stated that its submissions did not constitute a request for a final decision by the contracting officer on a claim. The government is correct that before the March 5 submission, the contractor submitted a document similar

to the March 5 submission (though unsworn) and indicated an intent to later file a certified formal claim. *See, e.g.*, J.A. 290 ("In the event that you decide to treat this [January 31, 2014 submission] as [an] REA and still reject our request for the adjustment of payments, we would then proceed with issuing a certified claim."); *id.* ("[W]e are hopeful that you treat this [January 31 submission] as [an] REA and conclude in our favor, which will in turn eliminate the possibility of proceeding with a certified claim."). But most of those communications occurred more than a year before HHL's March 5, 2015, submission and no similar communications followed the March 5 submission.[2]

The March 5 submission purportedly provided the certification that HHL had earlier recognized would be necessary to proceed with a claim. The March 5 submission was sworn unlike earlier submissions, and thus had a formality lacking in the earlier submissions. "[C]ertification plays a serious role in the statutory scheme because it triggers a contractor's potential liability for a fraudulent claim . . . . [and is] designed to discourage the submission of unwarranted contractor claims and to encourage settlement." *Skelly & Loy v. United States*, 685 F.2d 414, 418 n.11 (Ct.

---

[2]    During a nearly year-long communication hiatus by the USACE, HHL did inquire as to the status of its submission and whether it should "submit our claim." J.A. 86. But, as is clear from the other communications sent during that time, HHL was seeking a final decision on its submission (whether it called it a claim, an REA, or something else). *See, e.g.*, J.A. 109 (asking that the contracting officer "[p]lease let [HHL] know if the review of the case/information is going to be completed soon and when to expect the <u>final result</u>" (emphasis added)). To whatever extent there was uncertainty based on those communications, the contracting officer could have asked for clarification rather than issuing a "final determination" in the matter.

Cl. 1982) (citation omitted). It is also important that the contracting officer treated the denial of HHL's REA as a "final determination" in the matter. *See Transamerica*, 973 F.2d at 1578 n.2 ("The fact that the Government referred to the operative submission(s) as 'claims' was found persuasive . . . ." (citing *Contract Cleaning*, 811 F.2d at 592)). The contracting officer suggested in an email the need to file a formal claim, but this occurred after the contractor's submission was complete and the contracting officer had issued a "final determination" in the matter. The contracting officer could not retroactively turn a qualifying claim document into something else.

HHL's March 5 submission constituted a request for a final decision by the contracting officer, and the contracting officer's denial of that submission was a final decision on a claim. The Board erred when it concluded that it did not have jurisdiction over HHL's appeal.

We note that the Board found that HHL's March 5 submission did not contain a proper certification as required for a claim of more than $100,000. FAR 52.233-1(c); 41 U.S.C. § 7103(b)(1). "A contracting officer is not obligated to render a final decision on a claim of more than $100,000 that is not certified . . . ." 41 U.S.C. § 7103(b)(3). It is unclear how the certification was inadequate, but, as the Board and the government recognize, "[a] defect in the certification of a claim does not deprive a court or an agency board of jurisdiction over the claim." *Id.* "Prior to the entry of a final judgment by a court or a decision by an agency board, the court or agency board shall require a defective certification to be corrected." *Id.* Here, the government concedes that HHL could cure any issues with its certification on remand. Therefore, on remand the Board may require HHL to correct any defects in the certification for the March 5 submission.

## REVERSED AND REMANDED