ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| BAE Systems Ordnance Systems, Inc. | )     ASBCA No. 62416 |
| | ) |
| Under Contract Nos. W52P1J-11-C-0012 | ) |
| W52P1J-11-D-0013 | ) |

APPEARANCE FOR THE APPELLANT:       Michael A. Richard, Esq.
          Obermayer Rebmann Maxwell &
           Hippel LLP
          Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
          Army Chief Trial Attorney
          LTC Gregory T. O'Malley, JA
          LTC Jess R. Rankin, JA
          Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE PROUTY

The issue before us in the government's pending motion to dismiss is whether the Federal Circuit's recent decision in *Hejran Hejrat Co. Ltd v. United States Army Corps of Engineers*, 930 F.3d 1354 (Fed. Cir. 2019), so alters the law regarding requests for equitable adjustment (REAs) that a contractor submitting documents plainly intended to be REAs, but not claims pursuant to the Contract Disputes Act (CDA), and scrupulously avoiding requesting final decisions from the contracting officer (CO) must, nevertheless, be considered to have submitted claims pursuant to the CDA. In the case before us, the conversion of the REAs to claims without the contractor's intent or knowledge would require dismissal of the appeal because the time between the denial of the REAs and the submission of this appeal is beyond the CDA's statute of limitations. For the reasons explained below, *Hejran Hejrat* does not require such a result and the Army's motion to dismiss, advancing that argument, is denied.[1]

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

BAE Systems Ordnance Systems, Inc. (BAE) had two related contracts with the United States Army (Army). The first contract in the caption above (the 12 contract) is

---

[1] The government has also requested a stay of this case. That request is mooted by this decision.

the one relevant to the pending motion to dismiss, and it was to perform Facilities Operation and Maintenance of the Radford Army Ammunition Plant (RFAAP), collocated in Radford and Dublin, Virginia (*see* R4, tab 1). The second contract in the caption (the 13 contract) was to produce propellant at the RFAAP for use in artillery (*see* R4, tab 3).

An issue arose during contract performance regarding who would be responsible for payment of certain costs relating to environmental conditions at the site and fines that BAE was incurring from state regulators as a result (*see* R4, tabs 122, 186, 192). As a consequence, BAE submitted three letters to the CO: The first letter was submitted on December 7, 2016 (REA 1[2]) (R4, tab 122). The second was submitted on August 3, 2017 (REA 2) (R4, tab 186). The third was submitted on September 6, 2017 (REA 3) (R4, tab 192).

The "subject" line of each of the three letters from BAE labelled it as an REA (R4, tab 122 at 1338, tab 186 at 1612, tab 192 at 1680). Consistent with that label, the introductory paragraph of each letter begins with the words, "In accordance with FAR 52.243-1, Changes – Fixed Price (Alternate I), and DFARS 252.243-7002, Requests for Equitable Adjustment, BAE Systems Ordnance Systems Inc. (BAE Systems) herein submits our Request for Equitable Adjustment (REA) for . . ."[3] (R4, tab 122 at 1339, tab 186 at 1612, tab 192 at 1680). BAE did not request a CO's final decision pursuant to the CDA in any of the three letters (R4, tabs 122, 186, 192).

The penultimate paragraph of each letter consisted of the following words:

> I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief.

(R4, tab 122 at 1343, tab 186 at 1615, tab 192 at 1683) This is precisely the language contained in DFARS 252.243-7002, regarding REAs. The next paragraph was simply a sentence referring the CO to the person signing the letter if she had any questions. They were then signed by Shelley R. Czapkewicz-Klingborg, BAE Senior Manager, Contracts. (R4, tab 122 at 1343, tab 186 at 1615, tab 192 at 1683) Nowhere in the

---

[2] We refer to these letters here as REAs because that is what they were labelled by BAE and, as will be seen later in this opinion that is what we find them to be.

[3] The subject lines of the letters all referred to the REAs as being brought pursuant to the 12 contract (R4, tab 122 at 1338, tab 186 at 1612, tab 192 at 1680). The 12 contract incorporated by reference both Federal Acquisition Regulation (FAR) 52.243-1, Changes – Fixed Price (Alternate I), and the Department of Defense Supplement to the Federal Acquisition Regulation (DFARS) 252.243-7002, Requests for Equitable Adjustment (R4, tab 1 at 22).

letters does BAE state that the adjustment reflects the amount for which the contractor believes the government is liable, nor do they state that the certifier is authorized to bring the claim on behalf of the contractor (*id.*), which is the language required for claims certification by the CDA. 41 U.S.C. § 7103(b)(1).

BAE's opposition to the government's motion included the declaration of Roosevelt Burden. Mr. Burden testified that he was the Senior Manager of Contracts for BAE who was tasked with converting REA 1, REA 2, and REA 3 into claims within the meaning of the CDA (Burden decl. ¶ 6). Mr. Burden asserts that BAE did not intend for REA 1, REA 2 or REA 3 to be submitted or treated as a claim pursuant to the CDA (Burden decl. ¶¶ 7, 9). This was because BAE initially sought to negotiate the resolution of the REAs rather than pursue a CDA claim (Burden decl. ¶ 8, 10). Mr. Burden explained that in preparation of REA 1, REA 2 and REA 3, BAE purposefully avoided making a request to the CO for a final decision as defined in the CDA, 41 U.S.C. § 7103(d-f) (Burden decl. ¶¶ 7, 9-10).

Thus, on the facts before us, we conclude that each of the three letters was intended by BAE to be an REA as opposed to a CDA claim and that each letter unambiguously communicated as much to the government.

The government has alleged no communications from BAE which expressed a desire to convert these apparent REAs into CDA claims, nor, critically, has it identified any request from BAE for a final decision on the REAs. On the record before us, we find that there was no such request by BAE.

The CO responded to the REAs by letter on November 13, 2018. In the opening paragraph, she described the nature and purpose of the letter:

> The purpose of this letter is to notify BAE of my position on contractor entitlement relative to . . . [the] REA submittals. A technical and legal review of the initial REAs submitted were conducted, and were also considered in reaching my position. Upon thorough review and analysis of the information provided, I do not find merit or entitlement to any of the cost elements of the three REAs presented. However, the Procuring Contracting Officer (PCO) is willing to entertain reimbursement of a portion of the penalties paid . . . .

(R4, tab 197 at 1716) To be fair to the government, she did state that a contractor was required to prove its "claims" by a preponderance of evidence and that BAE had not done so (R4, tab 197 at 1719); moreover, she also referred to the REAs as a "claim" once when disavowing any admission of liability stemming from any settlement

3

discussions (R4, tab 197 at 1721), but did not otherwise suggest that she was issuing a final decision upon a claim or that the matter was being treated any differently than an REA.  The letter closed by requesting further information from BAE by November 20, 2018 (a week later) (*id.*).

BAE responded to the CO's letter on November 19, 2018.  The company's correspondence similarly described its purpose and intent:

> Th[e] purpose of this letter is to confirm receipt of the ACC-RI entitlement determination letter . . . [on the] REA submittals.  BAE Systems respectfully disagrees with the Government's entitlement determination and does not accept the Government's reimbursement of a portion of the penalties but appreciates the opportunity to further substantiate our REAs.  However, given the length of time that the Government took to evaluate and respond to BAE Systems REA submittals and the number of questions and issues raised by the letter, BAE Systems finds the Government's requested response date to be unreasonable. BAE Systems will need time to assimilate a comprehensive response that proves BAE Systems entitlement.

(R4, tab 200)

The CO responded to BAE's request on November 21, 2018:

> The Government is in receipt of . . . [BAE's] letter, in which BAE advised it would need additional time to provide a response that proves BAE entitlement regarding . . . [the] REAs.  BAE is reminded that, as is stated in [the determination] with respect to the referenced REAs, BAE has failed to fully demonstrate by a preponderance of evidence its claims that the Government bears full responsibility for the fines and penalties . . . .
> The purpose of this letter is to formally notify BAE that my Final Determination regarding referenced REAs will be forthcoming by close of business on December 14, 2018. If BAE has any additional information it would like to submit for consideration, it is welcome to do so prior to

4

this date.  I will consider any additional information with respect to [the] REAs provided it is received by close of business on December 13, 2018.

(R4, tab 202 at 1728-29)  This letter also included the same language that was in the CO's November 19 letter disavowing any admission of liability stemming from any settlement discussions over BAE's "claims" (R4, tab 202 at 1729).

On December 13, 2018 Mr. Burden from BAE sent a letter which stated:

Thank you for your correspondence dated 13 November 2018 . . . in which you explain the government's position regarding three requests for equitable adjustment submitted by BAE Systems . . . .  We are pleased to know the government's concerns and questions so that we may be better able to respond.  The purpose of this letter is to provide further explanation and substantiation of BAE Systems' entitlement to the referenced REAs.  In addition, we provide a certificate in accordance with DFAR 252.243-7002 at the end of this correspondence.  As you know, in these REAs . . . BAE Systems seeks equitable adjustments to the subject contract . . . arising out of certain environmental fines . . . .  BAE Systems paid the fines for these violations, and now seeks reimbursement from the government.

(R4, tab 203 at 1731)  With that letter, BAE included the certification required by DFARS § 252.243-7002 (the same REA certification that had been in its earlier correspondence) because it was providing additional information to support its REAs (R4, tab 203 at 1739; Burden decl. ¶ 12).  As in its prior correspondence, BAE did not include the certification required for a claim under the CDA or request a CO's final decision (R4, tab 203).

On January 9, 2019 the CO reiterated her response to BAE's REAs but couched as a final determination on the merits of the REAs:

The purpose of this letter is to notify BAE of the Procuring Contracting Officer's Final Determination relative to [the] REAs.  The Government has thoroughly reviewed the data submitted to date, including the additional information provided December 13, 2018 . . . .  Taking all of the information provided to date into consideration, the Government finds that BAE has still failed to establish

5

entitlement or merit for its claims, including evidence that
the Government bears full responsibility for the fines and
penalties imposed for violations and other cost elements
claimed in the REAs . . . .
Accordingly, the Government's Final Determination
rejects the referenced REAs in their entirety, as BAE has
failed to establish its entitlement to recovery under law and
regulation. If BAE chooses to dispute this determination,
it is entitled to submit a claim in accordance with
FAR 52.233-1 – Disputes.

(R4, tab 232 at 6040-41) In that letter, the CO only refers to BAE's submissions as REAs. She also clearly differentiated those submissions from claims as defined by the CDA, and did not refer to her letter as a Contracting Officer's Final Decision. This characterization of the REAs was confirmed by the direction to BAE to "submit a claim" if it disagreed with the CO's determination.

The CO went through that same process again in a letter on February 12, 2019, sent to provide BAE with an "additional opportunity to submit additional evidence or data to support [the] REAs"[4] (R4, tab 235 at 6052). Again the contracting officer referred to BAE's submissions only as REAs. The contracting officer included a warning that "BAE is hereby reminded that the additional opportunity presented by this letter shall not be misconstrued as deviation from the Final Determination" (R4, tab 235 at 6052).

On February 13, 2019, in response to this letter, BAE sent a short correspondence to the CO informing her that, though it had thought it had adequately supported its REAs, it would forward additional information for the CO's consideration by March 7, 2019 (R4, tab 238 at 6061). On February 21, 2109, BAE sent another letter to the CO, informing her that on further consideration, it had decided to not send a further response to the CO's February 12 letter (R4, tab 240 at 6067).

The CO tied up any loose ends on February 27, 2019, sending BAE a short letter reconfirming the Final Determination provided in the January 9, 2019 correspondence (R4, tab 243 at 6080). The February 27 letter again advised BAE that it could submit a claim following the procedure contained in its contract in FAR 52.233-1–Disputes (*id.*).

---

[4] This letter does not appear to have been a response to a formal letter or inquiry from BAE in response to the CO's January 9, 2019 letter, and the CO stated that she had not heard "directly" from BAE on the matter; rather, the CO was responding to what she "underst[ood]" to be questions BAE might have had about her final determination (R4, tab 235 at 6051).

In accordance with that advice and that same guidance in the January 9 final determination, BAE decided to "submit a claim" rather than file an appeal (Burden decl. ¶ 15). On June 17, 2019, BAE submitted a letter to the Army claiming entitlement to the same dollars sought through REA 1, REA 2 and REA 3 (R4, tab 246 at 6090). In contrast to the prior correspondence, BAE's introductory paragraph stated:

> BAE Systems Ordnance Systems, Inc. (BAE Systems) submits its claim arising from Contract No. W52P1J-11-C-0012 with the U.S. Army Joint Munitions Command (Army) for the operation and maintenance of the Radford Army Ammunition Plant (RFAAP) in Radford and Dublin Virginia. BAE Systems submits this claim pursuant to the Contract Disputes Act, 41 U.S.C. 7101-7109 (CDA), and requests a contracting officer's final decision.

(*Id*.) The recovery requested in the claim is nearly identical to the amount sought by the REAs.[5] The claim included a certification by Vincent Bevilaqua as director of contracts for BAE which states:

> I certify that this claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which I believe the Federal Government is liable, and that I am authorized to certify this claim on behalf of BAE Systems Ordinance Systems, Inc.

(R4, tab 246 at 6116-17) Mr. Bevilaqua's certification closely adheres to the certification required in 41 U.S.C. § 7103(b).

On August 13, 2019 the CO acknowledged "receipt of the . . . letter and related environmental claim submission. At this time no final decision has been made and the Government intends to submit its formal response by October 15, 2019." (R4, tab 260) Once it was received, the CO kept BAE informed of the government's progress in evaluating the claim. On October 11, 2019, the CO informed BAE that

---

[5] BAE's claim letter, which essentially converted the REAs under the 12 contract into a claim, also alleged, in the alternative, that it was entitled to relief under the 13 contract (R4, tab 246 at 6116-17), which explains the two contracts in the caption of this appeal.

"the Government is still evaluating. At this time, no final decision has been made and the Government intends to submit its formal response by 31 OCT 2019." (R4, tab 262 at 6308) On October 31, 2019, the CO informed BAE by email that "BAE's environmental claim dated 17 JUN 2019" was still being evaluated, that "no final decision has been made at this time" and he intended to issue a formal response by November 21, 2019 (R4, tab 266 at 6318). The next email was sent by the contracting officer on November 20, 2019 (R4, tab 268 at 6325). In that email BAE was informed that the government believed that "[m]ore time than previously anticipated is needed to continue our thorough evaluation of the subject environmental claim. As a result, no final decision has been made at this time. The Government intends to submit its formal response on/before 13 Dec." (*Id*.)

The government's self-imposed December deadline passed. On January 15, 2020, BAE was informed that the CO was out of her office because of a personal matter (R4, tab 273 at 6353). On January 30, 2020, BAE was informed by the CO that she had returned to her office and that she would provide a response by February 28, 2020 (R4, tab 275 at 6368). On February 24, 2020, BAE appealed the deemed denial of its claim to this Board.

## DECISION

The Army has moved to dismiss this appeal asserting that BAE's challenge to the contracting officer's decision is untimely since the REAs were, in fact, CDA claims, and the CO's final determination upon them was thus a CO's Final Decision upon the claims (*see* gov't mot. at 10-11). Indeed, the Army is correct that there is little basis for arguing that the text of the REAs did not meet the requirements for claims under the CDA (notwithstanding the clear intent of BAE to limit itself to REAs) (gov't mot. at 11), with one very intentional exception: BAE did not request a CO's final decision. BAE argues that this exception is enough to preclude the finding of a claim (app. opp'n at 16-17). BAE also argues that its use of the REA form of certification, rather than the CDA claim form of certification, is an additional basis for finding that it did not submit a claim (app. opp'n at 18-19). We reject BAE's argument regarding the form of certification as being contrary to the law. Nevertheless, we find that, unlike the circumstances in *Hejran Hejrat* which the Army relies upon, BAE's actions never explicitly or implicitly requested a decision, thus changing them to claims. Thus, because the first CO's decision on a claim from BAE was appealed in a timely fashion, we deny the government's motion.

I. The Distinction Between a Claim and an REA[6]

Broadly speaking, an REA is a request from a contractor to a CO to consider adjusting contract terms. Because of their (relatively) non-adversarial nature, contractors sometimes prefer to pursue REAs prior to submitting CDA claims so as to preserve the relationship of the parties during contract performance. *See generally, Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995) (overruled in part on other grounds, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579, n.10 (Fed. Cir. 1995)). Also, significantly, under certain circumstances, contractors may receive compensation for the sometimes-significant work required to prepare an REA that is short of a claim, but are foreclosed from such compensation if the document they submit to the CO is a claim. *Bill Strong Enterprises*, 49 F.3d at 1547-50. An REA is not defined by the CDA.

"Claim" is not defined by the CDA, either, thus the Federal Circuit instructs that we turn to the FAR for its definition. *See, e.g., H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995). FAR 2.101 provides that a claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract."

For us to possess jurisdiction over a claim under the CDA, it must request a final decision from the CO. 41 U.S.C. § 7103(a); *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1543 (Fed. Cir. 1996) ("The CDA [] requires that a claim indicate to the contracting officer that the contractor is requesting a final decision.")). But, the Federal Circuit has made clear that a claim requires no "particular form or use any particular wording" nor does it "require an explicit request for a final decision; 'as long as what the contractor desires by its submissions is a final decision, that prong of the CDA claim test is met.'" *Maropakis*, 609 F.3d at 1327-28 (quoting *Ellett,* 93 F.3d at 1543). In fact, a contractor's submission may merely imply a request for a contracting officer decision without explicitly doing so. *Ellet*, 93 F.3d at 1543 (quoting *Heyl & Patterson, Inc. v. O'Keefe,* 986 F.2d 480, 483 (Fed. Cir. 1993) ("a request for a final decision can be implied from the context of the submission.")).

The distinction between an REA and a claim is somewhat blurry, and often comes down to the second major component, whether the contractor has requested a final decision from the CO. In *Air Services, Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146, we explained that, "[t]here is no bright-line distinction between an REA and

---

[6] As will be discussed further in this section, a document entitled an REA can also be considered to be a CDA claim. Here, we are discussing non-claim REAs.

a CDA claim." *Id.* at 176,424.  Citing *Reflectone*, we noted that even a document referring to itself as an REA often meets the definition of a claim in that it makes a non-routine written demand for payment as a matter of right.  *Id.* at 176,424-25 (citing *Reflectone*, 60 F.3d at 1577).  Hence, in *Hejran Hejrat*, the communication with the CO was styled as an REA and the contractor disavowed any intention of submitting a claim, but the Federal Circuit nevertheless held that the document met the FAR's definition of a claim.  930 F.3d 1357-58.  In *Air Services* and other cases, an REA was converted to a claim upon the simple expedient of the contractor subsequently requesting a final decision from the CO.  *Air Services*, 15-1 BCA ¶ 36,146 at 176,425; *see also Hejran Hejrat*, 930 F.3d at 1357-58 (court "loath to believe" communications not meant as request for final decision); *cf. Madison Lawrence, Inc.*, ASBCA No. 56551, 09-2 BCA ¶ 34,235 (Appellant explicitly stated that it was converting its REA into a claim and it submitted a proper CDA claim certification.); *DTS Aviation Servs., Inc.*, ASBCA No. 56352, 09-2 BCA ¶ 34,288 (Contractor submitted a letter converting REA to a CDA claim).

## II.    The (Ir)Relevance of the Form of Certification

One distinction that does not make a difference between an REA and a claim is the form of the certification used.  The CDA requires that all claims over $100,000 in value be certified in accordance with 41 U.S.C. § 7103(b).  *Special Operative Grp., LLC*, ASBCA No. 57678, 11-2 BCA ¶ 34,860 at 171,480 (citation omitted).  The DFARs include a special certification to be used for REAs that does not include all of the statements required for certification of claims by the CDA's statutory language.  *Compare* DFAR 252.243-7002 (the DFARs REA certification provision) *to* 41 U.S.C. § 7103(b).  In *Air Services*, we held that the use of the REA certification did not prevent a submission from being a valid claim since the REA certification, notwithstanding its limitations, could be considered a defective, but curable CDA certification.  15-1 BCA ¶ 36,146 at 176,426-27.  Likewise, the REA in *Hejran Hejrat*, which the Federal Circuit held to constitute a CDA claim, used the DFARs-prescribed REA certification language.  *See Hejran Hejrat Co. LTD*, ASBCA No. 61234, 18-1 BCA ¶ 37,039 at 180,322-23 (Board decision describing use of DFARS REA certification); *Hejran Hejrat*, 930 F.3d at 1359 (finding any defect in certification not to be dispositive).

BAE argues that its use of the REA certification prevents its letters from being considered to be claims and that they can only be considered to be claims if it remedies their certification defects – something which it is unwilling to do, in contrast to the other cases cited above where it was the contractor that wished the defective certification to be remedied (*see* app. opp'n at 35-37).  This is a clever argument, but, ultimately, unpersuasive:  in the present case, we are dealing with a question of the statute of limitations.  Statutes of limitations are based upon when a case *can* be brought.  *See, e.g.*, *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 104 (2013).  If the REAs

were, in fact claims with defective certifications (as the government argues), their appeals could, nevertheless, be brought as soon as they were denied or deemed denied by the CO, *see* 41 U.S.C. § 7104; thus, the running of the statute of limitations is not impacted by the subsequent need to remedy the defective certification.

We do, however, believe that the use of the REA certification may prove relevant in providing context for communications from the contractor. Thus, when evaluating whether certain communications from the contractor to the CO represent an implicit request for a final decision, the fact that the contractor chose to use a non-claim certification could prove to be a helpful, though not necessarily dispositive, data point.[7]

### III.   BAE Did Not Request a CO's Final Decision

With the exception of arguing that its REA certification is inadequate for a CDA claim, BAE wisely makes little effort to argue that its REAs, on their faces, do not constitute claims. Instead, it primarily argues that it avoided converting them into claims by scrupulously refraining from requesting a CO's final decision. It succeeded.

First, the government identifies no explicit request for a contracting officer's decision in the correspondence regarding the REA's. This is hardly surprising as BAE intentionally sought to avoid converting its REAs into claims.

The government, instead, argues that BAE implicitly requested a final decision, analogizing it to the circumstances in *Hejran Hejrat*. It is mistaken. To be sure, the Federal Circuit in *Hejran Hejrat* found a document purporting to be an REA on its face and requesting that it be treated as an REA should be treated as a claim because, under the circumstances, the court felt the document implicitly requested a decision by the CO. *See* 930 F.3d at 1356-58. But in *Hejran Hejrat*, there had been a year-long exchange of documents and course of dealings between the parties which the Federal Circuit characterized in such a way as to make clear that things had changed between the parties by the time of the submission of the document that the court deemed to be a claim, including, notably, the addition of a certification that had not been present in earlier communications. *See id.* That is not the case presented here. Instead, there were three original submissions plainly not requesting CO decisions; there was a preliminary determination by the government which included a request for extra

---

[7] In a similar vein, though we do not believe that the opinion of the CO matters in determining whether a document is a claim (whether a document is a claim is surely an objective determination and not subject to the CO's wishes), the communications from the CO to the contractor in response to the contactor's submissions and the contractor's response thereto may prove helpful context in understanding what implicit requests are being made by the contractor.

11

information from BAE; BAE provided some additional information in December 2018, but no certification beyond what it had previously done[8] (in contrast to the circumstances in *Hejran Hejrat*, where the certification was new); and then, in February 2019, BAE generally indicated it might give the CO yet more information upon its request before thinking the better of it and declining to offer more substantive responses to the CO before she made her determination.

Thus, unlike the circumstances in *Hejran Hejrat*, the posture between the parties did not change substantially as the conversation regarding the REAs went forward. That was underscored by the correspondence between the parties indicating that the CO believed no claim had been submitted for a final decision and by the fact that BAE felt no need to correct that understanding. To be sure, this decision may be a closer call than it would have been prior to the *Hejran Hejrat* ruling, but on the very specific facts before us, we are persuaded that BAE did all that it could to keep its REAs from falling within the realm of being also considered CDA claims by carefully avoiding making a request – explicit or implicit – for a CO's final decision. The Army argument, that, despite its best efforts, BAE effectively made an implicit request for a CO's final decision by accident,[9] is mistaken. Notably, the Federal Circuit's *Hejran Hejrat* decision was based in part upon its finding that, in the circumstances presented in that case, it was "loathe to believe" that a "reasonable contractor" was not requesting a final decision in the circumstances of that case. 930 F.3d at 1358. By contrast, the reasonable contractor here, for its own good reasons, did not wish to cross the Rubicon by requesting a final decision. Thus, we will not find a request for a final decision where it was not explicitly made and not implicitly intended. At the end of the day (consistent with the law, of course), whether a contractor submits a claim or a non-claim REA should be up to the contractor.

---

[8] This certification was the REA certification which, while not dispositive (as discussed above), provides added support for a finding that BAE intended to avoid submitting a CDA claim.

[9] Another way to read the Army argument is that *Hejran Hejrat* effectively did away with non-claim REAs. If that were the Federal Circuit's intent, we believe our reviewing court would have said so directly before eliminating such an important aspect of contract administration.

<u>CONCLUSION</u>

The government's motion to dismiss for lack of jurisdiction is denied.

Dated: February 10, 2021

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62416, Appeal of BAE Systems Ordnance Systems, Inc., rendered in conformance with the Board's Charter.

Dated: February 10, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

13