ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| BB Government Services Srl | ) ASBCA No. 63255 |
| | ) |
| Under Contract No. FA5682-18-C-0032 | ) |

APPEARANCE FOR THE APPELLANT: Jonathan A. DeMella, Esq.
      Davis Wright Tremaine LLP
      Anchorage, AK

APPEARANCES FOR THE GOVERNMENT: Caryl A. Potter, Esq.
      Air Force Deputy Chief Trial Attorney
      Maj Nicole A. Vele, USAF
      Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE SMITH ON THE GOVERNMENT'S MOTIONS TO STRIKE COUNTS I-III FOR LACK OF JURISDICTION AND DISMISS COUNTS II-III FOR FAILURE TO STATE A CLAIM

This appeal involves a contract for BB Government Services Srl (BBGS) to construct an addition to Building 9109 at Aviano Air Base in Italy. BBGS alleges that the existing building structure was inadequate to support a new two-wing plenum gate required by the contract and seeks to recover $121,214.66 in damages for design and construction of a support portal for the new gate. In Count I of its complaint, BBGS asserts that the support portal was extra work for which it is entitled to an equitable adjustment under the changes clause. In Count II of its complaint, BBGS argues that the Air Force provided defective specifications for the project. In Count III of its complaint, BBGS alleges superior knowledge on the part of the Air Force regarding the adequacy of the existing structural support for the new gate. In Count IV of its complaint, BBGS claims that the Air Force ratified BBGC's entitlement to compensation for the additional work it performed. The Air Force moves to strike Counts I, II, and III for lack of jurisdiction on the grounds that they present claims that were never presented for a contracting officer's final decision (COFD). In the event Counts II and III are not stricken, the Air Force moves to dismiss Counts II and III for failure to state a claim upon which relief can be granted. We deny the Air Force's motions[1]

---

[1] The Air Force also moves to strike BBGS's request to recover attorneys' fees as premature under the Equal Access to Justice Act. However, we already denied BBGS's EAJA request as premature by Order dated May 23, 2022.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

On September 20, 2018, the Air Force awarded Contract No. FA5682-18-C-0032 to BBGS for, among other things, the construction of an addition to Building 9109 at Aviano Air Base in Italy, as well as system renovations, repairs, and upgrades to the building (R4, tabs 8 at 5, 9 at 4).  The scope of work was described in the contract's technical specifications (R4, tab 9 at 5) and the total contract price was $1,234,734.86 (R4, tab 8 at 4).[2]  This appeal concerns BBGC's demolition of an existing sliding gate and the design and construction of a new plenum double wing gate to replace it.

The contract specification relevant to the design and build of the new gate stated:

> Design and build of two wings plenum gate gates [sic], total size 15.90 x 7.60 mt. for the Paint Room according to the schemes reported on the drawings and UFC 4-211-02 3-5.2.8.2 Norms to assure a laminar air flow surrounding the aircraft during painting, including the modification of the air supply duct system from the air supply grilles to the gate. Design and build shall be complete with tracks, hinges, hardware, sealing gaskets, accessories, lockset, panic hardware on emergency doors, sheet metal air ducts, modifications to systems eventually interfering with the new ones and accessories. Gate shall be complete with wheels, safety devices in accordance with applicable norms, motor, control panel, cabling, accessories and any other item to provide a job in a workmanlike manner and in accordance with applicable norms.

(R4, tab 9 at 187) (footnote omitted)

During the design process for the new gate, BBGS determined that Building 9109's existing structure was incapable of supporting the weight of the new gate's wings (compl. ¶ 11).  After discussing the issue with the Air Force, BBGS proposed a solution in an email dated January 13, 2020, and notified the Air Force that it believed it was entitled to a contract adjustment to both price and time (R4, tab 33 at 1).  By email dated September 15, 2021, BBGS submitted a document it entitled as a request for equitable adjustment (REA) to the Air Force's contracting officer (CO) (R4,

---

[2] The contract's scope of work also involved work on Facility 9110 and demolition of Facilities 973 and 974 at Aviano Air Base, but this work was separate and not at issue in this appeal (R4, tab 9 at 4).

2

tab 38).  The REA asserted that Building 9109's existing steel columns were inadequate to support the new gate and that the additional structural work was outside the scope of the contract's documents and specifications (*id*. at 7-9).  In its REA, BBGS explicitly advised the CO that the purpose of its submission was to recover the additional costs arising from the fact that the existing structure could not support the new gate (*id*. at 4) and requested an equitable adjustment of €105,493.12[3] in direct costs as a result (*id*. at 11).  By letter dated December 22, 2021, the CO denied BBGS's REA, informed BBGS that the denial was a final decision, and advised BBGS of its rights to appeal the decision to the Board:

> This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken.

(R4, tab 40 at 2)  On April 18, 2022, BBGS appealed the CO's decision to the Board.

## DECISION

*The Parties' Contentions*

The Air Force moves to strike Counts I, II, and III for lack of jurisdiction on the grounds that they are separate claims from those presented in BBGS's September 15, 2021 claim and thus have not been the subject of a COFD (gov't mot. at 1, 8-14; gov't reply at 4-7).  In the event Counts II and III are not stricken, the Air Force moves to dismiss Counts II and III for failure to state a claim upon which relief can be granted (gov't mot. at 1; gov't reply at 7-9).  BBGS responds by arguing that Counts I, II, and III all stem from the same set of operative facts as its September 15, 2021, REA (app. opp'n at 6-10) and that Counts II and III adequately state claims that meet the Board's pleading standard (*id*. at 11-15).

*Standard of Review*

As the proponent of the Board's jurisdiction, BBGS bears the burden of establishing jurisdiction by a preponderance of the evidence.  *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816.  The Board's jurisdictional requirements to hear an appeal cannot be forfeited or waived.  *See United States v. Cotton*, 535 U.S. 625, 630 (2002).

---

[3] This amount is equal to $121,214.66 at Fiscal Year 2022's budget rate (R4, tab 40 at 1).

*Counts I, II, and III Stem from the Same Set of Operative Facts as BBGS's September 15, 2021, Claim*

The Board's jurisdiction under the Contract Disputes Act (CDA) is dependent upon the contractor's submission of its claim to the CO and a final decision on, or the deemed denial of, the claim. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816. Because the CDA does not define the term "claim," we look to the Federal Acquisition Regulations (FAR) for a definition. *Reflectone*, 60 F.3d at 1575; *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995). The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101; *see also M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010).

An REA, on the other hand, is a relatively non-adversarial request from a contractor to a CO to consider adjusting contract terms. *BAE Sys. Ordnance Sys., Inc.*, ASBCA No. 62416, 21-1 BCA ¶ 37,800 at 183,577. The distinction between a claim and an REA is frequently unclear and often comes down to the second CDA requirement—whether the contractor requested a final decision from the CO. *Id*. However, an REA may be converted into a claim by fulfilling the CDA's requirements of a valid claim, including a request for a COFD. *See Hejran Hejrat Co. Ltd. v. United States Army Corps of Engineers*, 930 F.3d 1354, 1357-59 (Fed. Cir. 2019); *Air Services, Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,424-25 (even a document referring to itself as an REA often meets the definition of a claim in that it makes a non-routine written demand for payment as a matter of right).

Here, while it did not explicitly request a COFD, BBGS's September 15, 2021, REA "request[ed] the Government [for] a fair adjustment of the contract amount" which was a non-routine request for payment that provided the Air Force with adequate notice of both the basis of the dispute and the amount in question (R4, tab 38 at 4).

Some amount of vagueness in a claim is acceptable so long as the claim contains sufficient information to allow the CO to evaluate its merits. In fact, a claim that contains no more than a simple assertion that a government order was beyond the scope of the contract's requirements and identifies the specific relief sought is sufficient. *Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed. Cir. 1984). Claims presented to the Board must "derive[] from the same set of common or related operative facts as the claim presented to the contracting officer and seek[] the same or similar relief." *Parwan Grp., Inc.*, ASBCA No. 60657, 18-1 BCA ¶ 37,082 at 180,495 (citing *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003)). The

contractor is not required to identify the exact legal theory on which relief is sought in its claim, so long as the contracting officer can give meaningful reasoned consideration of the claim. *See General Constr. Co.*, ASBCA No. 39983, 91-1 BCA ¶ 23,314 at 116,917 (contractor's inability to determine whether its claim arose from defective specifications or differing cite condition did not render the claim deficient). Moreover, so long as the contractor bases its appeal on the same underlying operative facts as those raised in its claim, the appeal is not restricted to those legal theories set forth in the claim. *Scott Timber*, 333 F.3d at 1365.

In the case at hand, each of BBGS's three counts stems from the same set of operative facts that support BBGS's September 15, 2011, REA/claim—the lack of structural capacity of Building 9109's existing steel columns to support the new gate and the Air Force's order for BBGS to design and construct an additional support portal. Indeed, all four counts of the Complaint allege the same "constructive change" that is explicit in BBGS's REA/claim.

The Air Force correctly points out that Count I of the complaint includes the terms "breach of contract" along with the references to a "constructive change" and to FAR 52.243-4, the Changes Clause. But the focus of Count I is a contract change, which relies on the same operative facts as BBGS's REA/claim and was addressed in the Air Force's COFD (compl. ¶¶ 17-26; app. opp'n at 8-9; R4 tabs 38, 40). The Air Force's contention that "[t]he operative facts supporting the breach of contract action in the Complaint occurred after Appellant submitted its Claim to the contracting officer" (gov't. mot. at 10) is not accurate. Instead, Count I's allegation paraphrases BBGS's REA/claim:

> The need for the design and construction of a portal or additional structure to support the new gate was extra work [that] was outside the scope of BBGS's contract and a change or constructive change for which BBGS was and is entitled to an adjustment of its contract price and period of performance.

(Compl. ¶ 25). Paragraph 26 in Count I would be clearer if it did not imply that the government's "breach" was failing to pay for the extra work—as opposed to ordering the extra work—but whether the alleged contract changes constitute a "breach of contract" is a substantive legal argument for further proceedings, not a factually separate claim. Count I, taken as a whole, relies on the same set of operative facts and is not factually distinct from BBGS's REA/claim.

Count II, BBGS's defective specification claim, alleges that the Air Force's specifications omitted structural work necessary to achieve the Air Force's objective of supporting the new gate (compl. ¶¶ 27-34; app. opp'n at 9). Again, whether the

5

structural capacity of Building 9109's existing steel columns to support the new gate and the Air Force's order for BBGS to design and construct an additional support portal amount to entitlement for a defective specification is a substantive issue. But that issue arises from the same set of operative facts as BBGS's REA/claim.

Count III, BBGS's superior knowledge claim, alleges that the Air Force was the only party with sufficient knowledge at the time of contract award to determine whether the existing structure was sufficient to support the new gate (compl. ¶¶ 35-38; app. opp'n at 10). Once again, this focuses upon the facts regarding the structural capacity of Building 9109's existing steel columns, and whether the requirement for BBGS to provide an additional support portal was expressed in the contract. These are explicit factual topics of—or reasonably inferable from—BBGS's REA/claim. And, while the REA/Claim and Count III do not use the exact same verbiage, portions of the REA/Claim focus on the "bidding phase" and allege that BBGS did not "understand that the assumption of the individual who prepared the SOW was wrong since a New Steel Frame and its foundations were necessary" (R4, Tab 38 at 9). Whether precisely worded or not, given the facts and circumstances here, that is consistent with an allegation of superior knowledge. When we look at the merits of BBGS's claims, the issue of superior knowledge may be redundant or superfluous if BBGS's changes claim has merit, but superior knowledge is not outside the Board's jurisdiction.

In sum, because all three counts in BBGS's complaint stem from the same set of operative facts as those set forth in BBGS's REA/claim, we deny the Air Force's motion to strike. *Scott Timber*, 333 F.3d at 1365.

> *Both Count II and Count III Adequately State Claims Upon Which Relief can be Granted*

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate where the facts asserted in the complaint do not entitle the claimant to a legal remedy. *John Shaw LLC d/b/a Shaw Bldg. Maint.*, ASBCA Nos. 61379, 61585, 19-1 BCA ¶ 37,216 at 181,183. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss for failure to state a claim, the scope of the Board's review is limited to evaluating the "sufficiency of allegations set forth in the complaint, 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *Lockheed Martin Integrated Sys., Inc.*, ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,281 (quoting *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014)). In deciding such a motion, the Board "must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *URS Fed. Servs., Inc.*, ASBCA No. 62475, 21-1 BCA ¶ 37,826 at 183,703.

In Count II of its complaint, BBGS alleges that the government is responsible for defective specifications and a constructive change because the stated requirements for the new gate did not meet an implied warranty that it was correct, adequate, and feasible to achieve the Air Force's objective (compl. ¶¶ 27-34). But the implied warranty that government specifications are free from design defects attaches only to design specifications—it "does not accompany performance specifications that merely set forth an objective without specifying the method of obtaining the objective." *White v. Edsall Constr. Co.*, 296 F.3d 1081, 1084 (Fed. Cir. 2002). In order to recover on a defective specifications claim, BBGS "must show three necessary elements—liability, causation, and resultant injury." *Servidone Constr. Corp. v. United States*, 931 F.2d 860, 861 (Fed. Cir. 1991).

Count II alleges that BBGS relied on the Air Force's specifications in preparing its bid for the project, that the specifications and drawings established that the new gate was to be attached to Building 9109's existing structure, that the specifications did not require the construction of an additional support portal for the gate, and that BBGS suffered increased costs and loss of time as a result (compl. ¶¶ 27-34). If Count II's allegations were taken as true *and* BBGS were able to demonstrate that the relevant specifications were design specifications, it would be entitled to relief. *See Servidone*, 931 F.2d at 861; *Edsall*, 296 F.3d at 1084. Accordingly, Count II adequately states a defective specifications claim against the Air Force. *See Iqbal*, 556 U.S. at 678; *URS Fed. Servs.,* 21-1 BCA ¶ 37,826 at 183,703.

Count III of BBGS's complaint alleges superior knowledge on the part of the Air Force at the time the contract was awarded (compl. ¶¶ 35-38). The superior knowledge doctrine imposes a duty upon the government to disclose otherwise unavailable information vital to contract performance to the contractor. *Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000). To prevail on a superior knowledge claim, the contactor must demonstrate that (1) the contractor undertook "to perform without vital knowledge of a fact that affected performance costs or duration, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor or did not put it on notice to inquire, and (4) the government failed to provide the relevant information." *Lee's Ford Dock, Inc.*, ASBCA No. 59041, 14-1 BCA ¶ 35,679 at 174,639 (quoting *Scott Timber Co. v. United States*, 692 F.3d 1365, 1373 (Fed. Cir. 2012)).

Again, the fundamental gist of all of BBGS's claims is that the contract required BBGS to design and build the new gate and to anchor it to the existing steel columns—without having to analyze the capacity of the steel columns or to provide an additional support portal to account for a lack of support capacity in the steel columns. Thus, according to BBGS, the contract did not disclose the fact that the existing steel

columns could not support the new gate that BBGS was required to provide (R4, tab 38 at 7-9).

Count III alleges that the Air Force was aware that BBGS had no knowledge nor any reason to know that Building 9109's existing structure would not support the weight of the new gate,[4] and that the Air Force failed to disclose the inadequate structural capacity of the existing steel columns to BBGS (compl. ¶¶ 35-38). If these allegations are found to be correct, BBGS would be entitled to recover under the superior knowledge doctrine. *See Lee's Ford Dock*, 14-1 BCA ¶ 35,697 at 174,639. Accordingly, Count III adequately states a claim for superior knowledge. *See Iqbal*, 556 U.S. at 678; *URS Fed. Servs.*, 21-1 BCA ¶ 37,826 at 183,703.

## CONCLUSION

For the foregoing reasons, the Air Force's motions are denied.

Dated: March 2, 2023

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[4] Paragraph 32 of the complaint specifically alleges that "[a] visual inspection would not have been able to discover that the steel structure of the building was insufficient to support the new gate."

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63255, Appeal of BB Government Services Srl, rendered in conformance with the Board's Charter.

Dated: March 2, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals