ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Application Under the Equal Access to Justice Act of -- | ) | |
| | ) | |
| Conquistador Dorado Joint Venture | ) | ASBCA Nos. 60942-EAJA, 60943-EAJA |
| | ) | 61111-EAJA, 61733-EAJA |
| | ) | 61952-EAJA |
| | ) | |
| Under Contract No. N69450-08-C-1267 | ) | |

APPEARANCES FOR THE APPELLANT:    Stephen B. Hurlbut, Esq.
John M. Neary, Esq.
Daniel B. Mitkus, Esq.
  Akerman LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
  Navy Chief Trial Attorney
David M. Marquez, Esq.
David M. Ruddy, Esq.
  Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL
ON APPELLANT'S EQUAL ACCESS TO JUSTICE APPLICATION

Appellant, Conquistador Dorado Joint Venture (CDJV), seeks fees and costs under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, because it prevailed on several appeals after a five-day hearing in November 2022. *Conquistador Dorado Joint Venture*, ASBCA No. 60042 *et al.*, 24-1 BCA ¶ 38,486 (*CDJV I*). The Board finds that CDJV is an eligible, prevailing party and that the government's position was not substantially justified with respect to its liquidated damages claim and that no special circumstances would make an award unjust. For the Dead 8 claim, the Board holds that the Navy's position was substantially justified. Accordingly, the Board grants the application in part and denies it in part.

BACKGROUND

These appeals arose from a contract at the Naval Air Station Key West for a project that included the removal of vegetation that interfered with the operation of the air station, the conversion of those areas into grassy wetlands that could be maintained by mowing, and drainage improvements. *CDJV I*, 24-1 BCA at findings 1, 6, 9.

In the introduction to our opinion, the Board described the appeals as falling into four categories. *CDJV I*, 24-1 BCA ¶ 38,486 at 187,051. For present purposes, we can simplify further by stating that there are two categories. The first category, ASBCA Nos. 60042 and 62796, concerned CDJV's claims for more than $14 million because it contended that it excavated deeper and removed vegetation in larger areas than the contract originally showed. *CDJV I* at findings 74, 77, 87. The Navy prevailed in those appeals, *CDJV I*, 24-1 BCA ¶ 38,486 at 187,066-71, but they are relevant here because the Navy contends that special circumstances in those appeals make an EAJA award in the pending appeals unjust.

The second category, although encompassing five appeals, boils down to two Navy claims: (1) a claim for liquidated damages for $834,400 due to late completion; and (2) a claim for more than $4.3 million because CDJV left excavated material in an area referred to as Dead 8 rather than removing it from the air station. *CDJV I*, 24-1 BCA ¶ 38,486 at 187,052. CDJV prevailed in those appeals. *CDJV I*, 24-1 BCA ¶ 38,486 at 187,071-72.

CDJV seeks to be compensated for attorney and paralegal fees at the EAJA cap of $125 per hour. 5 U.S.C. § 504(b)(1)(A)(ii); *CKY, Inc.*, ASBCA No. 60451-EAJA, 23-1 BCA ¶ 38,310 at 186,018 (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 581 (2008)). CDJV seeks expert witness fees at $80.14 (2017) - $90.84 (2023) per hour (app. br. at 10 n.6 (citing DFARS 237.104(f)(i)). In its opening brief, CDJV sought the following[1]:

1. Attorney and paralegal time on the appeals on which it prevailed:
   501.8 hours x $125 = $63,662.50[2] (app. br. at ex. B).

2. 30% of the attorney and paralegal time that was spent on all claims:
   (3,190.7 hours x $125) x 30% = $119,619[3] (app. br. at ex. D).

3. Preparation of the EAJA application:
   43.5 hours x $125 = $5,437.50 (app. br. at ex. F).

4. Fees and costs of its scheduling expert[4] totaling $92,587.15 (app. br. at ex. C).

---

[1] CDJV states that it has excluded attorney and paralegal time devoted solely to the unsuccessful Phase I and II claims (app. br. at 13).

[2] We calculate this amount as: 501.8 hours x $125 = $62,725.

[3] We calculate this amount as: (3,190.7 hours x $125) x 30% = $119,651.25.

[4] CDJV states that it has not sought the costs of its expert in geotechnical engineering, whose efforts were devoted solely to the Phase I and II claims (app. br. at 13-14).

5. Thirty percent of its expenses to litigate all claims:
   $251,754.76 x 30% = $75,526.43 (app. br. at ex. E).

It its reply brief, CDJV seeks an additional $9,125 in attorney and paralegal time (app. br. at ex. G). The total amount sought by CDJV is $365,957.58.

## DECISION

The Board shall award fees and other expenses incurred by a prevailing party (other than the government) unless it concludes that the agency's position was substantially justified or that special circumstances make an award unjust. 5 U.S.C. § 504(a)(1). To receive an award, CDJV must qualify as a party as defined by EAJA. "It must be a 'prevailing party,' the government position cannot have been 'substantially justified,' no 'special circumstances make an award unjust,' and its petition must have been timely." *WECC, Inc.*, ASBCA No. 60949-EAJA, 22-1 BCA ¶ 38,115 at 185,139 (citing *Comm' r, INS v. Jean*, 496 U.S. 154, 158-61 (1990)). The Board may also deny or reduce an award to the extent a party unduly and unreasonably protracted the final resolution of the matter in controversy. 5 U.S.C. § 504(a)(3).

## I.     Timeliness

The parties received the Board's decision on October 20, 2023. Neither party appealed the decision to the Court of Appeals for the Federal Circuit within the 120- day limit specified at 41 U.S.C. § 7107(a)(1). Accordingly, the Board's decision became final on February 20, 2024. A party has 30 days after the decision becomes final to file the EAJA application. 5 U.S.C. § 504(a)(2). CDJV filed its application on March 15, 2024, which is less than 30 days after the decision became final and it is, therefore, timely. The Navy does not question the timeliness of the application.

## II.    Status as a Party

As a partnership, CDJV qualifies as a party under EAJA if its net worth did not exceed $7,000,000 and it did not have more than 500 employees at the time the adversary adjudication was initiated. 5 U.S.C. §504(b)(1)(B). CDJV has submitted a declaration from Fernando Neris, the president of Dorado Services, Inc., who states that CDJV is a Florida general partnership. He further states that CDJV has never had more than 50 employees and has never had a net worth that exceeded $7 million. (App. br. at ex. A) The Navy does not challenge these statements and we conclude that CDJV is a party for purposes of EAJA.

3

III.     Prevailing Party

A party is a "'prevailing part[y]' for attorney's fees purposes if [it] succeed[ed] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). CDJV prevailed on all issues related to the assessment of liquidated damages and the Navy's claim related to Dead 8.

The Navy does not challenge CDJV's status as a prevailing party. The Board concludes that CDJV is the prevailing party on these appeals.

IV.     Substantially Justified Agency Position

The EAJA prohibits an award if the Government can demonstrate that its position was "substantially justified." 5 U.S.C. § 504(a)(1). "To be substantially justified, the government's position need not be 'correct,' or even 'justified to a high degree.'" *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988)). "Instead, the term 'substantially justified' means that the government's position was 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce*, 487 U.S. at 565). Whether the agency's position was substantially justified is "determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication . . . ." 5 U.S.C. § 504(a)(1).

Until about two months before the hearing began, the Navy was prosecuting additional claims against CDJV. But on September 16, 2022 the Navy filed a motion to amend its counterclaims. The motion: 1) reduced the number of days for which the Navy sought liquidated damages by 63 calendar days and changed the Navy's claimed project completion date from February 10, 2015 to December 9, 2014; and 2) eliminated eight discrete government claims identified in a contracting officer's final decision dated September 29, 2016 (*see* R4, tab 53 at 5). The former reduced the government's liquidated damages claim from $1,585,360 to $834,000. The elimination of the eight discrete issues reduced the amount sought by the Navy by another $823,177. As a result, liquidated damages and Dead 8 were the only remaining Navy claims. (*See* gov't mot. dated Sept. 16, 2022).

The appeals proceeded to a hearing in an unusual manner. CDJV elected a hearing in person while the Navy elected to submit its case on the record under Board Rule 11. The Navy submitted several affidavits related to the Phase I and II claims but did not submit any affidavits related to the liquidated damages and Dead 8 claims. Had the Navy submitted any such affidavits, CDJV would have had the opportunity to call the affiants as witnesses and cross examine them.

4

On the liquidated damages claim, the Navy essentially was left with the report of its scheduling expert, who it did not call as a witness. The Navy did not submit an updated expert report after it reduced its liquidated damages claim by 63 days. Thus, it was left with an expert report that stated that CDJV did not complete the work until February 10, 2015, despite the Navy's abandonment of this contention. *CDJV I* at finding 131.

Even more puzzling was that the expert faulted CDJV for failing to progress the work in Dead 8. *Id.* However, the evidence at the hearing showed that the Navy directed CDJV to stop work in Dead 8 in April or May of 2014 after the discovery of unexploded ordinance. It further showed that the Navy was responsible for removing the unexploded ordinance but had never done so. *CDJV I* at findings 108, 131-32. Thus, the expert seemed to be faulting CDJV for failing to do something that the Navy had directed it not to do. *Id.* at finding 132. Perhaps the expert could have addressed these issues if the Navy had called him as a witness, but it did not. The Navy's liquidated damages claim was not substantially justified.

As for the Dead 8 claim, the Board agreed with the Navy that the contract required CDJV to remove the excess excavated material from the site.[5] *CDJV I*, 24-1 BCA ¶ 38,486 at 187,071. The Navy did not prevail because it did not prove how many cubic yards of material that CDJV left in Dead 8. The Navy contended that CDJV left 59,369 cubic yards (CY) of material at Dead 8; its primary evidence supporting this was a one-page document dated February 2, 2018, more than three years after project completion. *CDJV I* at findings 111-12 (citing R4, tab 67). This document is an aerial photograph that purports to show that the Navy had used a LIDAR (light detection and ranging) sensor to determine the quantities in 12 mounds (or areas). *Id.* While this initially sounded promising, without supporting witness testimony, the Navy could not prove that the test had been performed with appropriate safeguards to ensure that CDJV (and no one else) had left all of the material in each of the 12 mounds. Nor could we know whether the equipment was used correctly. In other words, standing on its own, this document was an unreliable piece of evidence.

However, there was evidence that the Navy's claim had a substantial basis. CDJV completed Phase I of the project by the September 30, 2014 deadline. *CDJV I* at finding 86. While CDJV's Phase I claim included amounts for disposal of unsuitable materials, its Phase II claim did not, because the Navy had given CDJV permission to use Dead 8 to store the material there on a temporary basis (*CDJV I* at finding 107; tr. 2/123-24). Ultimately, CDJV left all Phase II material that remained

---

[5] The Navy allowed CDJV to place excavated material in Dead 8 temporarily. This material was ultimately not removed because of unexploded ordnance. This resulted in CDJV avoiding the cost of removing the material. *CDJV I* at findings 107-09.

after processing in Dead 8 due to the discovery of the unexploded ordnance (tr. 2/124; *see*, *e.g.*, *CDJV I* at findings 14, 107).

On October 30, 2014, (about six weeks before completion) CDJV submitted a request for equitable adjustment (REA) to the Navy seeking additional compensation for disposing of the unsuitable material 200 miles away in Broward County (R4, tab 48). The basis of the REA was that there were no longer any sites in the Florida Keys to dispose of the material, which increased CDJV's costs. CDJV did not contend that the contract allowed CDJV to leave the material in Dead 8. Among the representations in the REA is a statement that "approximately 40,000 cubic yards" of material remained to be hauled off site (*id.* at 2). The REA also included the DFARS 252-243-7002 REA certification language in which Mr. Neris stated, "I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief" (*id.* at 3). Because CDJV left all of the excess Phase II material at Dead 8 (tr. 2/124), it was reasonable for the Navy to contend that the 40,000 CY that CDJV referred to in this REA was at Dead 8.

Accordingly, the Navy submitted evidence supporting the following findings: 1) the contract required CDJV to remove the excess material from the site; 2) CDJV did not remove all of the material from the site; and 3) CDJV left at least some substantial amount of material in Dead 8, which 4) remained there as of October 30, 2014. While the Board did not rule in favor of the Navy on the Dead 8 claim, the Board concludes that for purposes of EAJA the Navy produced enough evidence for its position to be substantially justified.

V.       Special Circumstances/Unreasonable Protraction of the Litigation

The Navy contends that CDJV committed various misconduct on the project, most of which related to CDJV's unsuccessful Phase I and Phase II claims and which was not otherwise related to CDJV's defense of the Navy's Dead 8 and liquidated damages claims (*see* gov't br. at 3-4). Among other things, the Board found many of Mr. Neris' statements under oath concerning CDJV's Phase I and II claims to be incredible (*CDJV I* at findings 41, 57-58, 92, 99). The Board also found that CDJV and the Navy's project manager acted improperly and that these actions may have played a role in the Navy approving an earlier CDJV REA related to the Phase I and II work (*CDJV I* at findings 101-02).

The Navy bears the burden of proving that special circumstances make an award unjust. *Crawford v. United States*, 66 F.4th 1339, 1342 n.1 (Fed. Cir. 2023). Having found that the government's position with respect to Dead 8 was substantially justified, we consider special circumstances only with respect to the liquidated damages claim.

The Navy does not cite any precedent from the Federal Circuit or the Board that supports its contention that bad conduct related to other appeals is a basis for denying EAJA fees with respect to the appeals on which the contractor prevailed. Our precedent is to the contrary as we have held that the government's success on separate claims on a contract does not negate the contractor's entitlement to EAJA fees on the claims on which it prevailed. *CKY, Inc.*, ASBCA No. 60451-EAJA, 23-1 BCA ¶ 38,310 at 186,013.

The cases that the Navy cites do not support its position. In *L.G. Lefler, Inc. v. United States*, 801 F.2d 387, 388-89 (Fed. Cir. 1986), there was no contractor misconduct. Rather, the government sought the benefit of special circumstances because it contended that the case presented a legal issue of first impression. In *Taylor v. United States*, 815 F.2d 249 (3d Cir. 1987), a Navy sailor was convicted of manslaughter in Spain. While legal proceedings in Spain were ongoing the Navy involuntarily extended his enlistment but also told him that if he were discharged, the Navy would turn him over to the Spanish government. He later succeeded on a lawsuit that, in part, challenged the Navy's involuntary enlistment. But the Third Circuit denied EAJA fees due to special circumstances because Mr. Taylor had availed himself of the Navy's protection when it suited him, then deserted and fled from Spain to avoid serving a validly imposed prison sentence. *Id.* at 251-54. This has nothing to do with a contractor defending a liquidated damages claim.

Even more dissimilar is *Oguachuba v. Immigration and Naturalization Service*, 706 F.2d 93 (2d Cir. 1983), in which the Second Circuit denied EAJA fees to an immigrant who prevailed on a habeas corpus petition but who "would not have been incarcerated in the first place but for his notorious and repeated violations of United States immigration law" and who "was free to end his detention by voluntarily returning to" his own country. *Id.* at 99. Finally, in *Laboratory Supply Corp. v. United States*, 5 Cl. Ct. 28, 32-33 (1984), the Claims Court held that special circumstances were present, in part because the government had only a few days to respond to a pre-award injunction request and also because the plaintiff's own negligence in filling out the bid form had created the necessity for the protest. Because these special circumstances related to the claim in litigation, the Board does not see them as supporting the Navy's theory that actions in one claim can be applied to other claims in determining special circumstances.

The Board finds that there are no special circumstances justifying denial of EAJA fees on the liquidated damages claim and that CDJV did not unreasonably protract the liquidated damages claim.

7

VI.    Reasonable Fees and Expenses

As stated above, CDJV seeks a total of $365,957.58 in fees and expenses. CDJV does not seek payment for its attorney hours and expert witness fees in support of its unsuccessful Phase I and II claims. CDJV seeks: its attorney/paralegal hours for the successful claims; 30% of its attorney/paralegal hours to litigate all of the claims; the costs of preparing the EAJA application; and the costs of its scheduling expert. CDJV states that it seeks payment for fewer than 1,500 of the nearly 6,900 attorney and paralegal hours worked on the case as a whole (app. br. at 12). It further states that while it is seeking payment for its attorney fees at the $125 per hour EAJA cap, its actual billing rates for the work were as high as $550 per hour (*id.* at 11). CDJV has provided the Board with more than 100 pages of attorney and expert billing records in support of the application (app. br. at exs. B-F; app. reply br. at ex. G).

The Navy does not challenge the amount of the fee request. The amount that CDJV seeks does not appear inconsistent with amounts we have awarded in other appeals. For example, in *WECC*, the Board awarded $329,791.87 in fees and expenses. The appellant in that appeal prevailed on a claim for $383,927.17 in field office overhead but lost on a claim for $266,186.72 in home office overhead. While the appellant was unsuccessful on more than 40% of the total amount in dispute, the Board reduced the amount of attorney fees sought by only 20% because the majority of the hearing time was devoted to the successful claim. The Board exercised its discretion to fashion the award, rather than calculating it through a line-by-line examination of 200 pages of attorney billing records. *WECC, Inc.*, ASBCA No. 60949-EAJA, 22-1 BCA ¶ 38,115 at 185,141-42.[6]

In the pending appeals, it strikes the Board that, while the Navy's Dead 8 claim had a higher value, the liquidated damages claim was more complicated because it required a scheduling expert who prepared a report and testified at the hearing, and because it required CDJV to submit a new claim to the contracting officer to request a time extension in accordance with the Federal Circuit's decision in *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1331-32 (Fed. Cir. 2010) (requiring contractor to submit a claim for a time extension if it seeks to challenge the government's assessment of liquidated damages by asserting excusable delay). It also required CDJV to file an appeal with respect to that claim, No. 61952. *CDJV I* at findings 121-23. It further appears that CDJV's attorneys and expert would have had to do some of the Dead 8 work as part of CDJV's defense of the liquidated damages claim, because the Navy's expert faulted CDJV for failing to progress the Dead 8 work. *Id.* at finding 131. Thus, it does not appear to be equitable to reduce

---

[6] The Board reduced the fees by a further 20% due to the appellant's rejection of settlement offers, but the Navy does not make that argument in these appeals. *Id.*

CDJV's attorney fees based on the relative values of the Dead 8 and liquidated damages claims.

The Board rules that CDJV is entitled to half of the amounts it has sought for attorney and paralegal fees and expenses, plus 100% of its expert and the amounts for preparing the EAJA application, as follows:

Attorney hours for successful claims: $62,725  x 50%:         $31,362.50
Attorney hours to litigate all claims: $119,651.25 x 50%:     $59,825.63
EAJA application: $5,437.50 + $9,125:                         $14,562.50
Scheduling expert fees and expenses:                         $92,587.15
Expenses to litigate support all claims: $75,526.43 x 50%:   $37,763.22
                                            TOTAL =           $236,101

## CONCLUSION

CDJV is awarded $236,101 in fees and expenses under the EAJA.

Dated:  July 2, 2024

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur                                I concur

OWEN C. WILSON                          THOMAS P. MCLISH
Administrative Judge                    Administrative Judge
Acting Chairman                         Armed Services Board
Armed Services Board                    of Contract Appeals
of Contract Appeals

9

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60942-EAJA, 60943-EAJA, 61111-EAJA, 61733-EAJA, 61952-EAJA, Appeals of Conquistador Dorado Joint Venture, rendered in conformance with the Board's Charter.

Dated:  July 2, 2024

_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals